United States District Court
Southern District of Texas
**ENTERED**
April 03, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

VALERIE  LOY,                              §
                                           §
            Plaintiff,                     §
                                           §
VS.                                        §     CIVIL ACTION NO. 7:18-CV-4
                                           §
REHAB SYNERGIES, LLC,                      §
                                           §
            Defendant.                     §

## ORDER

Pending before the Court is the motion for conditional certification[1] filed by Valerie Loy,

on behalf of herself and all others similarly situated, ("Plaintiff"), as well as Rehab Synergies

L.L.C's ("Defendant") response,[2] and Plaintiff's reply.[3]

After considering the motion, the record, and the relevant authorities, the Court

**GRANTS** Plaintiff's motion as follows.

### I.  BACKGROUND

This is a Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), case concerning

"off the clock" work allegedly performed by Plaintiff and other therapists while working for

Defendant, a skilled nursing provider with approximately forty-four locations throughout the

state of Texas.[4] The instant motion concerns whether Plaintiff has provided sufficient evidence to

---

[1] Dkt. No. 31; *see also* Dkt. No. 32 (Memorandum in support).
[2] Dkt. No. 33.
[3] Dkt. No. 34.
[4] Dkt No. 1 p. 2, ¶ 12; Dkt. No. 33 p. 2, ¶ IA. It is somewhat unclear from the pleadings the number of facilities Defendant currently maintains. Defendant indicates there are 50 or 51 locations in its response. *See* Dkt. No. 33 pp. 23–24.

conditionally certify a collective class of all therapists in five different jobs who worked for Defendant at any time after March 8, 2015.[5]

Plaintiff was employed by Defendant from March 2014 to August 2016 at its facility in McAllen, Texas.[6] Plaintiff filed suit in this Court alleging that she, and other similarly situated therapists, worked "off the clock or otherwise underreported their time" while employed by Defendant.[7] Plaintiff alleges that this off-the-clock work occurred as a result of the "onerous productivity requirements" set by Defendant.[8] Plaintiff alleges further that Defendant knew off-the-clock work was occurring and "expressly encouraged it."[9] As a result of this practice, Plaintiff alleges she and other similarly situated employees have been "denied overtime payments that they are due" in violation of the FLSA.[10]

After filing, four other plaintiffs ("Opt-in Plaintiffs") filed written consent forms opting into the case.[11] Defendant's company is divided into four different regions; Plaintiff and all Opt-in Plaintiffs worked in the same region, which includes nine facilities in the Dallas region and two facilities in the McAllen, Texas area.[12] All five Plaintiffs who have currently opted into this suit worked only at two facilities: McAllen Nursing located in McAllen, Texas and Colonial Manner in Pharr, Texas.[13]

This Court held a scheduling conference with the parties during which Plaintiff indicated that she would seek conditional certification of a collective class of all therapists who had worked for Defendant at all locations since 2015, and therefore, that the potential opt-in class

---

[5] See Dkt. No. 31; Dkt. No. 32.
[6] Dkt. No. 1 p. 2, ¶ 8.
[7] Dkt. No. 1 p. 3, ¶ 13.
[8] Id.
[9] Id.
[10] Id. ¶¶ 15–17.
[11] See Dkt. Nos. 21 (Notice of Consent forms signed by ReAnna McNames and Nancy N. Garcia), 22 (Notice of Consent form signed by Sophia Silva), 26 (Notice of Consent form signed by Kathryn Campbell).
[12] Dkt. No. 32-1 Defendant Regional Director Jennifer Maya Deposition 7:23–9:7 ("Maya Dep.").
[13] See Dkt. No. 33 p. 1.

could encompass up to one thousand employees.[14] Due to the potential complexity and scope of the case, the Court entered a scheduling order dividing discovery into two phases.[15] Phase I—the current Phase—is dedicated to determining "the merits of the substantive claims" and consists of deadlines pertaining to conditional certification.[16] Phase II will consist of sending an opt-in notice to any eligible plaintiffs and discovery pertaining to the merits of the case.[17]

In accordance with the scheduling order, Plaintiff timely filed a motion to conditionally certify a collective class of all therapists in five different positions who have worked for Defendant at any time since March 8, 2015.[18] Pursuant to § 216(b) of the FLSA, Plaintiff seeks to conditionally certify a collective class of approximately 1,000 practitioners who are, or were, employed by Defendant in five different jobs: speech language pathologists ("SLPs"), physical therapists ("PTs"), physical therapist assistants ("PTAs"), occupational therapists ("OTs"), and certified occupational therapist assistants ("COTAs").[19] Defendant responded,[20] and Plaintiff replied.[21] The Court now turns to its analysis.

## II.   LEGAL STANDARD

The FLSA requires covered employers to compensate non-exempt employees at overtime rates when they work in excess of the statutorily defined maximum number of hours.[22] If they are unlawfully denied overtime, § 216(b) of the FLSA permits an employee to bring suit against an employer "for and in behalf of himself . . . and other employees similarly situated."[23] The

---

[14] *See* Minute Entry dated April 10, 2018.
[15] Dkt. No. 27 (scheduling order).
[16] *Id.*
[17] *Id.*
[18] Dkt No. 31; *see also* Dkt. No. 32 (Memorandum in support).
[19] Dkt. No. 33 p. 2, ¶ IA; *see also* Dkt. No. 33-7 ¶¶ 4–5 (Declaration of Carmen Vitton Chief Operating Officer of Defendant declaring that there are over 1,000 current and former therapists and assistants since January 2015).
[20] Dkt. No. 33.
[21] Dkt. No. 34.
[22] 29 U.S.C. § 207(a).
[23] 29 U.S.C. § 216(b).

circuits have developed two approaches to certifying collective actions brought pursuant to § 216(b). The Fifth Circuit has expressly refused to endorse either method.[24]

This Court has already determined that the "two-step" method developed in *Lusardi v. Xerox Corporation*, is appropriate in this case.[25] Under that method, a district court first makes a decision, based on the pleadings and any affidavits, whether to "conditionally" certify the collective action and authorize notice to potential class members.[26] In the first stage, the notice stage, if Plaintiff has come forward with competent evidence, then the Court will approve the sending of notice to putative collective action members, and discovery will continue, during which time members may opt-in to the action.[27] In the second stage, the merits stage, the Court may "decertify" the collective action upon a showing that the case lacks merit for collective action, *i.e.* the plaintiffs are not "similarly situated" under § 216(b).[28] Thus, once the opt-in period has expired, and discovery has been largely completed, then Defendant may bring a motion to decertify the class.[29]

At this stage, the notice stage, district courts have broad discretion in determining whether to order court-supervised notice to prospective plaintiffs.[30] Generally, the standard for satisfying the first step is lenient;[31] however, plaintiff still bears the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exists.[32] Where—as here—substantial discovery has already occurred "something more than the plaintiff's own

---

[24] *Mooney v. Aramco Services*, 54 F.3d 1207, 1216 (5th Cir. 1995).
[25] 118 F.R.D. 351 (D. N.J. 1987); *see* Dkt. No. 27.
[26] *Mooney*, 54 F.3d 1207 at 1214.
[27] *Id*.
[28] *Id*.
[29] *Id*.
[30] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).
[31] *Id*.
[32] *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994–95 (E.D. Tex. 2011).

allegations and declarations is required."[33] Plaintiff must make a showing of at least "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination."[34]

The court should satisfy itself that the potential plaintiffs are similarly situated with respect to their job requirements and pay provisions.[35] However, a plaintiff need only show that all the positions sought to be included in the collective action are similar to plaintiff's position, not identical.[36] "Geographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy."[37] Where "there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate."[38] The presence of an official policy against off-the-clock work does not defeat conditional certification if the plaintiff provides substantial evidence that regular off-the-clock work is occurring.[39]

A court may deny conditional certification if the action arises from "circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."[40] Ultimately, the Court's determination centers on whether a factual nexus exists between the proposed members of the class such that the grouping promotes judicial efficiency.[41]

---

[33] *Nieddu v. Lifetime Fitness, Inc.,* 977 F. Supp. 2d 686, 692 (S.D. Tex. 2013).

[34] *Mooney,* 54 F.3d at 1214 n.8 (citing *Sperling v. Hoffmann-La Roche, Inc*., 118 F.R.D. 392, 407 (D.N.J. 1988)).

[35] *Allen v. McWane, Inc*., 2006 U.S. Dist. LEXIS 81543, 2006 WL 3246531, *2 (E.D. Tex. 2006).

[36] *Id.*

[37] *Vargas v. Richardson Trident Co*., 2010 U.S. Dist. LEXIS 15104, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (collecting cases).

[38] *Heeg v. Adams Harris, Inc*., 907 F. Supp. 2d 856, 863 (S.D. Tex. 2012).

[39] *See e.g., Falcon v. Starbucks Corp*., 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) (conditionally certifying a collective class despite the fact that Starbucks had an official "time worked is time paid" policy); *see also Johnson v. RGIS Inventory Specialists,* 554 F. Supp. 2d 693, 709 (E.D. Tex. 2007) ("When an employer knows or has reason to believe that an employee is working for the employer's benefit, the time spent by the employee is work time, even if the work was not requested.").

[40] *Watson v. Travis Software Corp*., No. H-07-4104, 2008 U.S. Dist. LEXIS 94824, at *12 (S.D. Tex. Nov. 21, 2008) (quoting *England v. New Century Fin. Corp*., 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

[41] *Shidler v. Alarm Sec. Grp., LLC*, 919 F. Supp. 2d 827, 829 (S.D. Tex. 2012); *see also Flowers v. MGTI, LLC,* CIV.A. H-11-1235, 2012 U.S. Dist. LEXIS 73900, 2012 WL 1941755 (S.D. Tex. May 29, 2012).

### III.   ANALYSIS

Plaintiff requests the court conditionally certify all therapists working for Defendant, approximately 1,000 individuals, as a collective class under the FLSA.[42] Plaintiff specifically seeks to conditionally certify the following collective class:

> all therapists (*i.e.*, [SLPs], [PTs], [PTAs], [OTs], [COTAs]) who have been employed by Defendant at any time since March 2015 at any of Defendant's skilled nursing facilities in the state of Texas.[43]

Plaintiff also requests the Court order Defendant to produce a list of all collective members, including names and last known addresses, and authorize notice to these collective members via U.S. mail and email.[44]

Plaintiff argues that the large collective class is appropriate because a uniform productivity requirement makes off-the-clock work inevitable for all the positions at all of Defendant's facilities.[45] Plaintiff contends that all five jobs at all facilities have the same job requirements and must perform similar "non-productive" work which is not billable and makes meeting productivity requirements unrealistic on a daily basis without off-the-clock work.[46] Plaintiff asserts that "productivity goals were not merely suggestions and meeting them was not optional."[47] Plaintiff also argues therapists routinely work off-the-clock to meet productivity requirements and Defendant "turns a blind eye to the practice."[48] Finally, Plaintiff maintains that this is common to all of Defendant's facilities across Texas.[49]

While denying the merits of Plaintiff's claims, Defendant argues that even if conditional certification were warranted for the McAllen and Pharr locations, it would not be warranted for

---

[42] Dkt. No. 31 p. 1.
[43] *Id.*
[44] *Id.*
[45] Dkt. No. 32 p. 5, ¶ IIA.
[46] *Id.* at p. 8.
[47] *Id.* at p 11.
[48] *Id.* at p. 15.
[49] *Id.* at p. 9.

Defendant's other facilities in Texas. Defendant argues that no Plaintiff works outside of McAllen and Pharr and thus Plaintiff's allegations amount to the individualized claims of Plaintiff and Opt-in Plaintiffs, all of whom worked closely together and reported to the same supervisors.[50]

To determine whether conditional certification is appropriate, the Court will first consider the evidence provided by Plaintiff and then analyze whether that evidence satisfies Plaintiff's burden of demonstrating the putative class members were victims of a single policy such that moving forward as a collective class is in the interest of judicial economy.

a.      **Factual Evidence**

Plaintiff argues that the productivity requirement set by Defendant, combined with the threat of discipline for failing to meet productivity goals, led to regular off-the-clock work at all of Defendant's facilities. In addition, Plaintiff argues that members of management for Defendant knew or encouraged these practices, or at the least, should have known off-the-clock work was occurring. The Court will consider the evidence provided regarding each.

i.      *Productivity Requirement*

Each employee of Defendant self-reports his or her hours, clocking in and out via a computer program that tracks time worked and productivity.[51] Defendant defines productivity as "the amount of billable time divided by the time" an employee clocks in.[52] Billable time consists of "[p]atient care activities or patient care related activities."[53] Thus, work not typically

---

[50] *Id.* at p. 2.
[51] Dkt. No. 32-3 Plaintiff Dep. 69:7–23.
[52] Dkt. No. 32-1 Maya Dep. 17:19–21.
[53] *Id.* 17:24-25.

performed in the presence of the patient is not billable, and is not considered in determining an employee's productivity rating.[54]

All of Defendant's Texas facilities have a 90% productivity expectation,[55] although individual facilities have discretion to set productivity goals based on factors unique to that facility.[56] The productivity goal for Plaintiff and Opt-in Plaintiffs was 95%.[57]

The rules regarding which activities are billable are "the same for each discipline at each facility."[58] Non-billable work must be performed by all five therapist jobs.[59] All five jobs share basic similarities: each must perform ordered courses of treatment and document patients' progress regarding these treatments.[60] However, each job provides a different type of therapeutic treatment. SLPs work on speech rehabilitation,[61] PTs and PTAs provide physical therapy,[62] OTs and COTAs are responsible for occupational therapy.[63] The assistant positions, PTAs and COTAs, have similar job responsibilities as the therapist positions, but there are some tasks that they cannot perform, and they have less responsibility for paperwork.[64]

Non-billable work could include things such as conferring with nursing staff, completing paperwork, team meetings, and conferring with family members.[65] In some circumstances, some non-billable work, could be completed at the same time as a billable task by multi-tasking; for example, by completing a non-billable task—such as paperwork—at the same time the patient

---

[54] Dkt. No. 32; *see* Dkt. No. 32-8 (Rehab Service Matrix); *see also* Dkt. No. 32-3 Plaintiff Dep. 50:7–24.
[55] Dkt. No. 32-1 Maya Dep. 11:15–23; 32-2 Defendant Chief Operating Officer Carmen Vitton Deposition 38:3 ("Vitton Dep.").
[56] Dkt. No. 32-2 Vitton Dep. 38:24–39:3.
[57] *See e.g.*, Dkt. No. 32-3 Plaintiff Dep. 100:2–6; Dkt. No. 32-12 (Collective Exhibit of Weekly Team Meeting Agendas).
[58] Dkt. No. 32-2 Vitton Dep. 46:5–10.
[59] *See* Dkt. No. 32-8.
[60] *Id.*
[61] *See* Dkt. No. 32-3 Plaintiff Dep. 22:19–24:4.
[62] *See* Dkt. No. 32-4 Opt-in Plaintiff Kathryn Campbell Deposition 49:3–51:8 ("Campbell Dep.").
[63] *See* Dkt. Nos. 32-7 Opt-in Plaintiff Reanna McNames Deposition 56:1–57:1 ("McNames Dep.").
[64] *See* Dkt. No. 32-3 Plaintiff Dep. 119:9–16; Dkt. No. 32-7 McNames Dep. 58:16–59:6.
[65] *See* Dkt. No. 32-8; *see also* Dkt. No. 32-3 Plaintiff Dep. 51:7–53:1.

was engaged in a billable task, such as a therapy technique that did not require active monitoring.[66]

### ii. Discipline for Failing to Meet Productivity Requirements

Plaintiff contends that therapists who did not meet productivity goals were subject to disciplinary procedures. Plaintiff argues therapists were "constantly reminded of their productivity requirements."[67] In support Plaintiff points to a collective exhibit of weekly meeting agendas which remind therapists of productivity requirements.[68] Further, therapists are told of the productivity requirement when hired.[69]

In addition, Plaintiff provides testimonial and documentary evidence that therapists could be subject to disciplinary procedures for failing to meet productivity goals. Plaintiff received a written disciplinary "Corrective Action Record" for failing to meet productivity requirements.[70] Plaintiff's Corrective Action Record is based solely on Plaintiff's failure to meet her 90% productivity goal.[71]

Additionally, Opt-in Plaintiff Silva testified she was disciplined for failing to meet productivity requirements, among other things.[72] Opt-in Plaintiffs Campbell, McNames, and Garcia testified that they were told to meet productivity requirements in discussions with supervisors, but that they did not receive written disciplinary documents for missing productivity

---

[66] *See e.g.,* Dkt. No. 32-4 Campbell Dep. 52:1–53:13; Dkt. No. 32-6 Opt-in Plaintiff Sophia Silva Deposition 75:2–76:9 ("Silva Dep."); Dkt. No. 32-9 Dkt. No. 32-9 Jubenal Garcia Deposition 45:4–24 ("J. Garcia Dep.").

[67] Dkt. No. 32 p. 12.

[68] *See* Dkt. No. 32-12. It is unclear from the Exhibit at which facility these agendas were used. From context the Court assumes they were created for the McAllen facility.

[69] *See* Dkt. No. 32-10 (March 23, 2016 Team Meeting Agenda). The Court again notes that the location of this meeting is not indicated by the evidence provided in the record.

[70] *See* Dkt. No. 32-11.

[71] *Id.* (stating, "[Plaintiff] will maintain a weekly productivity average of 90%).

[72] Dkt. No. 32-6 Silva Dep. 113:1–114:13.

goals.[73] Silva also testified that she knew of at least four other therapists who were disciplined for failing to meet productivity requirements.[74] Similarly, Opt-in Plaintiffs Campbell and Garcia testified that they knew of other therapists who were disciplined due to failing to meet productivity requirements.[75]

### iii.   Regular Off-the-Clock Work at McAllen Nursing and Colonial Manor

Plaintiff contends that the result of the productivity requirements was routine off-the-clock work and provides evidence regarding the experience of Plaintiff and Opt-in Plaintiffs at the McAllen Nursing and Colonial Manner locations. Plaintiff acknowledges that off-the-clock work is against Defendant's official policy,[76] but contends off-the-clock work occurred so regularly, with Defendant's knowledge, that it amounted to a widespread policy.

In support of this allegation, Plaintiff and all four Opt-in Plaintiffs each testify they worked off-the-clock in order to meet the productivity requirements.[77] All five admitted they intentionally falsified their time sheets to achieve this result, even though this was explicitly prohibited in Defendant's company policies.[78]

Plaintiff further provides the testimony of Opt-in Plaintiffs Campbell, McNames, Garcia, and Silva, who all testify that the former Director of the McAllen facility, Maurice Caceres ("Caceres") told them to alter their own time sheets—or altered their time records for them—to

---

[73] Dkt. No. 32-4 Campbell Dep. 69:20–21; Dkt. No. 32-7 McNames Dep. 72:15–23; Dkt. No. 32-5 Opt-in Plaintiff Nancy Garcia Deposition 74:11–15 ("N. Garcia Dep.").
[74] *Id.* 102:24–103:21.
[75] Dkt. No. 32-4 Campbell Dep. 43:6–44:5; Dkt. No. 32-5 N. Garcia Dep. 76:13–77:22.
[76] *See e.g.,* Dkt. No. 32-3 Plaintiff Dep. 60:22–61:13; Dkt. No. 32-7 McNames Dep.62:5–7.
[77] *See* Dkt. No. 32-3 Plaintiff Dep. 107:13-109:13; Dkt. No. 32-4 Campbell Dep. 89:7–90:16; Dkt. No. 32-5 Garcia Dep. 48:10–24; Dkt. No. 32-6 Silva Dep. 83:23–85:19; Dkt. No. 32-7 McNames Dep. 40:2–14.
[78] *See e.g.*, Dkt. No. 32-5 N. Garcia Dep. 51:15–52:16.

meet productivity requirements.[79] Similarly, Plaintiff testified that Caceres also told her to work off-the-clock to meet productivity requirements.[80]

### iv.     Regular Off-the-Clock Work at Defendant's Other Locations

Plaintiff provides evidence that similar off-the-clock work was regularly occurring at Defendant's other facilities in Texas. Plaintiff argues that Defendant's productivity records show that "therapists at [Defendant's] facilities throughout Texas routinely billed more time for therapy services than the company recorded as on-the-clock time."[81] Plaintiff states that "[b]etween January 2015 and January 2018, Defendant's records show hundreds of instances in which therapists have monthly productivity averages in excess of 100%. The only way such productivity is mathematically possible is for a therapist's billable time to exceed her on-the-clock time."[82]

Plaintiff provides examples of Defendant's official productivity reports from five different months between 2015–2017.[83] The Court notes that Defendant's productivity reports show monthly averages, which indicates that these are not isolated incidents, but repeated circumstances in which therapists are regularly recording billable time exceeding on-the-clock time. Members of management for Defendant admit that one possible reason that productivity would be over 100% is if a therapist were working off-the-clock,[84] and that productivity in excess of 100% should not be the norm.[85]

---

[79] Dkt. No. 32-4 Campbell Dep. 34:22–36:1; Dkt. No. 32-5 Garcia Dep. 49:8–24; Dkt. No. 32-6 Silva Dep. 76:13–77:8; Dkt. No. 32-7 McNames Dep. 79:5–24.
[80] *Id.* 93:8–12.
[81] Dkt. No. 32 p. 12.
[82] *Id.* at pp. 12–13.
[83] *See* Dkt. Nos. 32-14, 32-15, 34-2, 34-3 & 34-4.
[84] *See* Dkt. No. 32-13 Defendant Corporate Representative Melissa Collier 28:3–17 ("Collier Dep."); Dkt. No. 32-1 Maya Dep. 43:9–14; Dkt. No. 32-9 Defendant McAllen Director Jubenal Garcia Deposition 75:1–3. ("J. Garcia Dep.").
[85] Dkt. No. 32-2 Vitton Dep. 63:24–64:20.

The monthly averages provided to the Court show numerous therapists at facilities across Texas reporting average productivity numbers in excess of 100%.[86] For example, in January of 2015 at least 38 therapists at 18 different facilities had productivity scores in excess of 100%.[87] Similarly, in July of 2016 there were 27 therapists in 17 different facilities who had average productivity scores above 100%.[88] The data from May 2015, September 2016, and August 2017, also show numerous instances of therapists at Defendant's facilities across Texas achieving greater than 100% productivity.[89] The productivity records for all months provided also show hundreds of individuals who had exactly 100% productivity.[90] Plaintiff argues that this data "raises more than a mere inference that Plaintiff has alleged a common practice affecting therapists at Defendant's other facilities."[91]

Plaintiff acknowledges that one legitimate cause of productivity in excess of 100% is an efficiency technique called "layering of modalities."[92] Layering of modalities is when a therapist places "a patient in an unattended supervised modality . . . and then provides a one-to-one treatment with another patient."[93] That is, a therapist starts a patient on a unsupervised technique and then works one-on-one with another patient simultaneously, and bills both techniques at the same time.

However, Plaintiff argues that layering modalities is not the most likely explanation of the productivity records in excess of 100%. In support, Plaintiff points to testimony that this technique only applies to Medicare Part B patients.[94] It is unclear from the record what

---

[86] *See* Dkt. Nos. 32-14, 32-15, 34-2, 34-3 & 34-4.
[87] *See* Dkt. No. 32-14 (Productivity Averages by Facility and Therapist for January 2015).
[88] *See* Dkt. No. 32-15 (Productivity Averages by Facility and Therapist for July 2016).
[89] *See* Dkt Nos. 34-2, 34-4 & 34-5.
[90] *See* Dkt. Nos. 32-14, 32-15, 34-2, 34-3 & 34-4.
[91] Dkt. No. 32 p. 14.
[92] *Id.* at p. 17.
[93] Dkt. No. 32-13 Collier Dep. 25:16–20.
[94] Dkt. No. 32-1 Maya Dep. 37:23–40:11, 41:19–42:5; Dkt. No. 32-13 Collier Dep. 25:1–26:11.

proportion of Defendant's overall patients are Medicare Part B, and thus, how often this technique could be used.[95] Members of management at Defendant indicated that layering modalities is the only way that productivity would be higher than 100% without off-the-clock work or error.[96]

<em>v.    Management Knew or Should Have Known About Off-the-Clock Work</em>

Plaintiff argues that off-clock-work was occurring regularly throughout Defendant's locations and that Defendant "turned a blind eye" to the practice. Plaintiff argues that Defendant knew, or should have known, that off-the-clock work was occurring on a regular basis.

Plaintiff points to the testimony regarding the actions of Caceres, who, as previously explained, ordered Plaintiff and Opt-in Plaintiffs to alter their time sheets or to work off-the-clock.[97] Plaintiff additionally provides testimony regarding another former Director, Jubenal Garcia. Opt-in Plaintiff McNames testified that Jubenal Garcia acknowledged that he knew off-the-clock work was regularly occurring.[98] Opt-in Plaintiff Silva also testified Jubenal Garcia discussed therapists working off-the-clock.[99] Finally, Jubenal Garcia himself corroborates this testimony and acknowledges that at one point he told some of the Opt-in Plaintiffs that he suspected therapists at other locations worked off-the-clock to meet productivity requirements.[100]

Plaintiff argues that even if Defendant did not have actual knowledge of off-the-clock work, they should have known that it was occurring. Plaintiff argues that members of

---

[95] *See* Dkt. No. 33-7 Declaration of Defendant Chief Operating Officer Carmen Vitton ("Medicare Part A Patients typically make up the smallest percentage of [Defendant's] patients. Most of [Defendant's] patients are either Medicare/Managed Care Part B, Medicaid, or facility funded.").

[96] *See* Dkt. No. 32-13 Collier Dep. 26:12–15; Dkt. No. 32-1 Maya Dep. 47:6–10; Dkt. No. 32-9 J. Garcia Dep. 75:16–76:04.

[97] Dkt. No. 32-4 Campbell Dep. 34:22–36:1; Dkt. No. 32-5 Garcia Dep. 49:8–24; Dkt. No. 32-6 Silva Dep. 76:13–77:8; Dkt. No. 32-7 McNames Dep. 79:5–24.

[98] Dkt. No. 32-7 McNames Dep. 76:6–24.

[99] Dkt. No. 32-6 Silva 107:16–108:13.

[100] Dkt. No. 32-9 J. Garcia Dep. 65:23–66:4. Opt-in Plaintiff Silva provided testimony supporting that such a conversation occurred. *See* Dkt. No. 32-6 Silva Dep. 107:7–108:13.

Defendant's management acknowledged off-the-clock work could explain productivity numbers in excess of 100% and that productivity numbers above 100% should be investigated, but that Defendant had failed to investigate whether this was the case. Specifically, the Regional Director for McAllen and Pharr testified that monthly productivity numbers in excess of 100% should be something that a manager would "typically want to drill down into."[101] Defendant's Chief Operating Officer stated that monthly productivity numbers in excess of 100% should be "pretty uncommon," and that an administrator should "keep an eye" on such numbers and ask "why or how" they were achieved.[102] Defendant's Corporate Representative similarly testified that while she is not responsible for monitoring productivity reports, monthly productivity numbers in excess of 100% could be something that would need to be investigated.[103] However, each stated that they had not investigated any of Plaintiff's claims, nor conducted an investigation regarding whether off-the-clock work was occurring regularly for individual employees.[104]

### b.   Analysis

The Court finds that Plaintiff has provided "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[105] Therefore, the Court determines that conditional certification of the entire collective class requested by Plaintiff is in the interest of judicial economy for the purposes of sending notice.

First, Plaintiff has provided evidence that all five job descriptions are "similarly situated" such that certifying a collective action is appropriate.[106] All facilities are impacted by the same 90% productivity requirement and all job descriptions had to meet this productivity

---

[101] Dkt. No. 32-1 Maya dep. 42:16–43:14.
[102] Dkt. No. 32-2 Vitton Dep. 63:24–64:25.
[103] Dkt. No. 32-13 Collier Dep. 26:23–27:7 (acknowledging that it was not her responsibility to monitor productivity, but she would investigate if there appeared to be a problem).
[104] Dkt. No. 32-1 Maya Dep. 55:1–17; Dkt. No. 32-13 Collier Dep. 24:7–15, 28:3–29:1; Dkt. No. 32-2 Vitton Dep. 65:1–72:3.
[105] *Mooney*, 54 F.3d at 1214 n.8.
[106] *See Allen*., 2006 U.S. Dist. LEXIS 81543, 2006 WL 3246531 at *2.

requirement.[107]   Each job shares similar job responsibilities.[108] Plaintiff has provided examples of therapists and assistants disciplined for failing to meet these requirements.[109] Thus, employees in each of the five job descriptions are subject to the "same policy, decision, or plan." [110]

Although each job provides different therapy techniques, each job provides therapy to patients, the billing practices are generally the same for each, and each is required to log that information. Similarly, although the assistant positions, PTAs and COTAs, may have greater ease in satisfying the productivity requirement, these positions are still subject to the same productivity requirement. Thus, they are subject to the same time pressures. For the purposes of notice, they are therefore similarly situated.

Plaintiff has provided evidence that the result of these policies is regular off-the-clock work. Plaintiff and Opt-in Plaintiffs regularly worked off-the-clock to meet productivity requirements, and at least one Director, Caceres, altered, or ordered employees to alter, time sheets such that the employee would not be paid for time worked.[111] This is sufficient to determine that Plaintiff has provided "substantial allegations" that all five jobs at the McAllen and Pharr locations were "victims of the same plan" and thus sufficient to satisfy the requirements to send notice to employees in all five jobs who worked at the McAllen and Pharr locations.[112]

Plaintiff also provides a reasonable basis to conclude that "the same policy applies to multiple locations of a single company."[113] As noted, therapists at Defendant's facilities

---

[107] Dkt. No. 32-1 Maya Dep. 11:15–23; 32-2 Vitton Dep. 38:3.
[108] *See* Dkt. No. 32-8.
[109] *See e.g.*, Dkt. No. 32-11.
[110] *Mooney*, 54 F.3d at 1214 n.8.
[111] *See* Dkt. No. 32-3 Plaintiff Dep. 107:13-109:13; Dkt. No. 32-4 Campbell Dep. 34:22–36:1, 89:7–90:16; Dkt. No. 32-5 Garcia Dep. 48:10–49:24; Dkt. No. 32-6 Silva Dep. 76:13–77:8, 83:23–85:19; Dkt. No. 32-7 McNames Dep. 40:2–14, 79:5–24.
[112] *See Mooney*, 54 F.3d at 1214.
[113] *See Heeg*, 907 F. Supp. 2d at 863.

15 / 21

throughout Texas face a uniform productivity requirement of 90%, and the exact same job requirements.[114] Plaintiff further provides productivity records indicating hundreds of instances of therapists averaging monthly productivity above 100%.[115] Finally, Plaintiff provides evidence that at least one Director suspected that therapists at other locations were working off-the-clock to meet productivity goals.[116]

Defendant contends that even if Plaintiff can establish a pattern of off-the-clock work at Defendant's facilities in McAllen and Pharr, Plaintiff has not provided sufficient evidence to establish a collective class as to Defendant's other facilities.[117] In support, Defendant points to Plaintiff's deposition in which she testified she was not aware of off-the-clock work at Defendant's facilities outside of Pharr and McAllen.[118] Defendant also argues that the productivity numbers do not necessarily indicate off-the-clock work. Defendant points out there are number of ways in which productivity could be increased, including multi-tasking, using students or assistants, or group therapy.[119]

Defendant's arguments are insufficient. the Plaintiff correctly points out that while the efficiency techniques indicated by Defendant make it easier to meet productivity goals, they would not lead to productivity numbers in excess of 100%.[120] As Defendant's representatives admit, only layering modalities—which only applies to Medicare Part B patients—would explain productivity numbers in excess of 100% without error or off-the-clock work.[121]

The Court notes that Defendant could be correct, and the productivity numbers in excess of 100% *could* be caused by layering modalities or error, but Plaintiff has provided sufficient

---

[114] *See* Dkt. No. 32-8.
[115] *See* Dkt. Nos. 32-14, 32-15, 34-2, 34-3 & 34-4.
[116] Dkt. No. 32-9 J. Garcia Dep. 65:23–66:4; *see* Dkt. No. 32-6 Silva Dep. 107:7–108:13.
[117] Dkt. No. 33.
[118] Dkt. No. 32-3 Plaintiff Dep. 105:22–25.
[119] Dkt. No. 33 p. 17.
[120] Dkt. No. 34 p. 4.
[121] *See e.g.*, Dkt. No. 32-1 Maya Dep. 47:6–10.

evidence that these numbers *could also* indicate regular off the clock work. Defendant provides no evidence this is not the case.

Specifically, there is no evidence in the record indicating how many Medicare Part B patients Defendant services, and, thus, the impact that layering modalities may have on productivity numbers. Defendant points to a declaration by Defendant's Chief Operating Officer that "Medicare Part A patients typically make up the smallest percentage of Defendant's patients. Most of [Defendant's] patients are Medicare Part B, Medicaid or facility-funded."[122] However, nothing in the record provides any evidence that the layering modalities technique can be applied to Medicaid or facility-funded patients. Thus, this provides no information regarding how often the layering modalities technique may be utilized. Nor does Defendant provide any evidence indicating what "typically" means in terms of the specific facilities involved. Thus, the Court finds the record provides no information regarding the likelihood that layering modalities could account for productivity numbers in excess of 100%. Accordingly, Defendant provides nothing to rebut the inference that off-the-clock work is the explanation for productivity numbers in excess of 100%.

Defendant further admits it has not investigated to determine regular off-the-clock work explains the productivity numbers in excess of 100%.[123] The Court notes that the productivity reports provide monthly averages. Therefore, if the monthly productivity numbers for each therapist are in excess of 100% because of off-the-clock work, the reports could indicate thousands of individual days employees worked off-the-clock and were not paid for their work. Defendant's representatives admit productivity numbers in excess of 100% could indicate

---

[122] Dkt. No. 3-7 ¶ 6.
[123] *See* Dkt. No. 32-9 J. Garcia Dep. 65:23–66:4; Dkt. No. 32-4 Campbell Dep. 34:22–36:1; Dkt. No. 32-1 Maya Dep. 55:1–17; Dkt. No. 32-13 Collier Dep. 24:7–15, 28:3–29:1; Dkt. No. 32-2 Vitton Dep. 65:1–72:3.

employees working hours for which they were not being paid.[124] However, Defendant has taken no steps to investigate if any employees were working off-the-clock despite Plaintiff's current allegations and hundreds of therapists reporting productivity above 100%. Defendant may not hide behind "conscious myopia and studied indifference" to avoid litigation on claims where there is substantial evidence that employees at multiple locations are regularly not being paid for the entire amount they are working.[125] Neither may Defendant hide behind its official policy regarding off-the-clock work, when faced with substantial evidence that this policy is not being followed.[126]

Plaintiff, at this stage, need not provide evidence that off-the-clock work was actually occurring, but merely must provide substantial allegations that there is a collective class of individuals similarly situated to Plaintiff.[127] Plaintiff has met that burden. Plaintiff has presented testimonial evidence that off-the-clock work was regularly occurring at McAllen Nursing, and that at least some members of management knew of this practice, allowed it to happen, or even altered time sheets to ensure that Plaintiff and Opt-in Plaintiffs were not paid for their work. Further, Plaintiff has provided testimony and productivity records sufficient to support a reasonable conclusion that the same practice was occurring at other locations across Texas. This is sufficient to conditionally certify the collective class as requested by Plaintiff, for the purpose of sending notice. Accordingly, the Court **GRANTS** Plaintiff's motion and conditionally certifies the following class:

---

[124] *See* Dkt. No. 32-13 Collier Dep. 28:3–17; Dkt. No. 32-1 Maya Dep. 43:9–14; Dkt. No. 32-9 J. Garcia Dep. 75:1–3.
[125] *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 514 (5th Cir. 1969).
[126] *Falcon* 580 F. Supp. 2d at 536.
[127] *Mooney*, 54 F.3d at 1214.

all therapists (*i.e.*, [SLPs], [PTs], [PTAs], [OTs], [COTAs]) who have been employed by Defendant at any time since March 8, 2015 at any of Defendant's skilled nursing facilities in the state of Texas.[128]

The Court will now provide the scheduling deadlines for the case moving forward.

### c. Phase II Scheduling Deadlines

Because the Court has conditionally certified Plaintiff's proposed collective class, the Court now sets the following deadlines, as indicated in the previous scheduling order:

- Within fourteen days of this Order, Defendant must provide to Plaintiff a listing of all speech language pathologists, physical therapists, physical therapist assistants, occupational therapists, and certified occupational therapists who have been employed by Defendant at any time since March 8, 2015 at any of Defendant's skilled nursing facilities in the state of Texas. Such list shall include the name, last known mailing address, last known email address, and last known telephone number.
- The parties must submit to the Court: (1) proposed notice language; (2) a proposed deadline for issuance of notices; and (3) a proposed deadline by which the opt-in period closes by **April 16, 2019**.
- *Within thirty days after the opt-in period has closed*: the parties must submit a joint discovery case management plan that proposes specific discovery deadlines for the merits of this case.

### d. Admonition to Defense Counsel

The Court notes that Defense counsel's response consistently cites to the record in a manner that, at best, misleads the Court as to the truth of Defendant's assertion, and, at worst, is completely factually incorrect and unsupported by the record.

The Court will illustrate the deficiency in Defendant's response through an example. At one point, Defendant states, "Silva is not aware of *any* employees at *any* [of Defendant's] facilit[ies] being disciplined for missing productivity" and cites to Opt-in Plaintiff Silva's deposition testimony page 103.[129] While a portion of Opt-in Plaintiff Silva's testimony appears

---

[128] *Id.*
[129] Dkt. No. 33 p. 12 (emphasis added).

to support Defendant's assertion, in context Silva's testimony actually supports the *opposite*.

Opt-in Plaintiff Silva's testimony, in context, is as follows:

> Q: Do you know of any employees at McAllen Nursing who have been disciplined for falling short of their productivity requirement?
> A: Yes.
> Q: Who?
> A: I believe her last name was Robinson, Adrian Robinson, Christine McCleary, Valerie Loy, myself. I believe Reanna [McNames] has.
> Q: Anyone else?
> A: Not that I can remember at this time?
> Q: And that's for McAllen Nursing?
> A: Uh-huh.
> Q: Do you know of any employees at Colonial Manner who have been disciplined for falling short of the productivity requirement? And, again, for—for these questions I'm asking about January 2015 to January 2018.
> A: No.
> Q: Okay. Do you know of any employees at any *other* . . . facilities that have been disciplined for falling short of the productivity requirement?
> A: No.[130]

When read in context, Silva clearly and directly indicates that she has personal knowledge of five employees of Defendant, including herself, who she believes were disciplined for failing to meet productivity requirements. This directly contradicts Defendant's assertion that Silva testified that she was not aware of "any employees at any . . . facility" who had been disciplined.[131] Defendant appears to be referencing, out of context, the portion of Silva's testimony regarding facilities outside of McAllen and Pharr. Further, Defendant omits the reference to "other" facilities, which materially changes the meaning of Silva's statement. This at best indicates a lack of care, and at worst, indicates an intent to deliberately mislead the Court.

Defendant's response is replete with similarly misleading or incorrect assertions; the Court finds it unnecessary to list them all. However, the Court reminds Defense counsel of every attorney's duty to only present factual contentions that, to the best of the person's knowledge,

---

[130] Dkt. No. 32-6 Silva Dep. 102:24–103:21 (emphasis added). (Defendant did not include page 102 in its response, but Plaintiff included the page in its motion).
[131] Dkt. No. 33 p. 12.

have evidentiary support or are likely to have evidentiary support with further investigation.[132] The Court admonishes Defense counsel to adhere to the duty of care and honesty required when presenting any argument or factual assertion to the Court.

## IV.   HOLDING

Based on the foregoing, the Court **GRANTS** Plaintiff's motion to conditionally certify[133] the following collective class:

> all therapists (*i.e.*, [SLPs], [PTs], [PTAs], [OTs], [COTAs]) who have been employed by Defendant at any time since March 8, 2015 at any of Defendant's skilled nursing facilities in the state of Texas.[134]

The Court further sets the following deadlines:

- Within fourteen days of this Order, Defendant must provide to Plaintiff a listing of all speech language pathologists, physical therapists, physical therapist assistants, occupational therapists, and certified occupational therapists who have been employed by Defendant at any time since March 8, 2015 at any of Defendant's skilled nursing facilities in the state of Texas. Such list shall include the name, last known mailing address, last known email address, and last known telephone number.
- The parties must submit to the Court: (1) proposed notice language; (2) a proposed deadline for issuance of notices; and (3) a proposed deadline by which the opt-in period closes by **April 16, 2019**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 3rd day of April, 2019.

_____
Micaela Alvarez
United States District Judge

---

[132] Fed. R. Civ. P. 11(b)(3).
[133] Dkt. No. 31.
[134] *Id.*