United States District Court
Southern District of Texas
**ENTERED**
September 02, 2021
Nathan Ochsner, Clerk

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  TEXAS
MCALLEN  DIVISION

| | |
|---|---|
| VALERIE  LOY, On Behalf of HERSELF and All Others Similarly Situated, §§§§ | |
| Plaintiffs, § | |
| VS. § | CIVIL  ACTION  NO.  7:18-cv-00004 |
| § | |
| REHAB  SYNERGIES,  LLC, §§ | |
| Defendant. | |

## OPINION AND ORDER

The  Court  now  considers  "Defendant's  Motion  for  Partial  Summary  Judgment  and  to

Dismiss Certain Plaintiffs"[1] and "Defendant's  Motion  for  Decertification,"[2]  Plaintiffs'  responses,[3]

and Defendant's  replies.[4]  After  considering  the  motion,  record,  and  relevant  authorities,  the  Court

**GRANTS** Defendant's  motion  for partial summary  judgment  **in part**,[5] and **DENIES** Defendant's

motion  for decertification.[6]

### I.   BACKGROUND AND PROCEDURAL  HISTORY

This  is  a  Fair  Labor  Standards  Act  ("FLSA")[7]  case  concerning  "off-the-clock"  work

allegedly  performed  by  Plaintiffs  and  other  therapists[8]  while  working  for  Defendant,  a  skilled

nursing  provider  with  approximately  forty-four  locations  throughout  the  state  of  Texas.[9]

---

[1] Dkt. Nos. 59 & 60.
[2] Dkt. No.  62.
[3] Dkt. Nos. 68 & 67.
[4] Dkt. Nos. 71 & 72.
[5] Dkt. No. 59.
[6] Dkt. Nos. 59 & 62.
[7] 29 U.S.C. § 201 et seq.
[8] Speech Language Pathologists (SLPs), Physical Therapists (PTs), Physical Therapy Assistants (PTAs), Registered Occupational Therapists (OTRs),  and Certified  Occupational Therapy Assistants (COTAs).
[9] Dkt No. 1 p. 2, ¶ 12; Dkt. No. 33 p. 2, ¶ IA. It is somewhat unclear from the pleadings the number of facilities Defendant currently maintains. Defendant indicates there are 50 or 51 locations in its response. *See* Dkt. No. 33 pp. 23–24.

Named Plaintiff Valerie Loy was employed by Defendant from March 2014 to August 2016 at its facility in McAllen, Texas.[10] On January 5, 2018, she filed suit in this Court alleging that she, and other similarly situated therapists, worked "off the clock or otherwise underreported their time" while employed by Defendant.[11] Plaintiff further alleges that this off-the-clock work occurred as a result of the "onerous productivity requirements" set by Defendant.[12] Plaintiff also alleges that Defendant knew off-the-clock work was occurring and "expressly encouraged it."[13] As a result of this practice, Plaintiff alleges that she and other similarly situated therapists have been "denied overtime payments that they are due" in violation of the FLSA.[14]

After filing, four additional plaintiffs ("Opt-in Plaintiffs") filed written consent forms opting into the case.[15] Due to the potential complexity and scope of the case, the Court entered a scheduling order dividing discovery into two phases.[16] Phase I was dedicated to determining "the merits of the substantive claims" and consists of deadlines pertaining to conditional certification.[17] Phase II consisted of sending an opt-in notice to any eligible plaintiffs and discovery pertaining to the merits of the case.[18]

Following Phase I of discovery, the Court certified the case as a § 216(b) collective action, allowing Plaintiff to send notice to all therapists[19] who have been employed by Defendant at any time since March 8, 2015 at any of Defendant's skilled nursing facilities in the state of Texas.[20]

---

[10] Dkt. No. 1 p. 2, ¶ 8.

[11] Dkt. No. 1 p. 3, ¶ 13.

[12] Id.

[13] Id.

[14] Id. ¶¶ 15–17.

[15] See Dkt. Nos. 21 (Notice of Consent forms signed by ReAnna McNames and Nancy N. Garcia), 22 (Notice of Consent form signed by Sophia Silva), 26 (Notice of Consent form signed by Kathryn Campbell).

[16] Dkt. No. 27 (scheduling order).

[17] Id.

[18] Id.

[19] Eligible therapists included speech language pathologists, physical therapists, physical therapist assistants, occupational therapists, and certified occupational therapists.

[20] Dkt. No. 35 at 21.

The collective certified by the Court included five different types of therapists and therapist assistants: speech language pathologists (SLPs), physical therapists (PTs), physical therapist assistants (PTAs), occupational therapists (OTs), and certified occupational therapist assistants (COTAs).[21] After conditional certification, another forty-five opt-in Plaintiffs joined the case.[22] Of the total forty-nine opt-in Plaintiffs, forty-two have responded to Defendant's written discovery.[23]

Defendant's company is divided into four different regions. [24] Plaintiff and Opt-in Plaintiffs work at twenty-nine of Defendant's forty-four facilities in Texas.[25] The time-keeping practices are the same for all therapists and therapist assistants at all of Defendant's facilities. Each employee of Defendant self-reports his or her hours, clocking in and out via a computer program that tracks time worked and productivity.[26] Defendant defines productivity as "the amount of billable time divided by the time" an employee clocks in.[27] Billable time consists of "[p]atient care activities or patient care related activities."[28] Thus, work not typically performed in the presence of the patient is not billable, and is not considered in determining an employee's productivity rating.[29]

---

[21] Dkt. No. 35 at 21.
[22] *See* Dkt. Nos. 40–48 (Notice of Consent forms signed by Michelle Cole; Jeremy P. Lawson; Mardel Hollie Weger; Wendy Adamo; Cara Bradford; Sharon G. Burns; Mary Camposano; Lana Crenshaw; Ryan Degerstrom; Holly Gates; Chavita Green; Deunta Jenkins; Angela La Manna; Jameson Lee; Eyvonnia McCrary-Taylor; Sheena McLaurin; Lanita Meadows; Paul Mendiola; Jennifer Mensah; Marsha Moneyheffer; Trislyn Palmer; Mattie L. Rogers; Debra Smith; Jorgina Tamplen; Courtney Warren; Colette K. Boyd; James Chambers, Jr.; Lula Gordon; Ricardo Macias; Todd Piatt; Mary Picardi; Leigh A. Strolis; Veronica Zubowski; Mindy Barry; Tracy Nolan; Taryn Trason; Keri Johnson; Ballah Burch; Rhianna Acheson; Vannoy Lin Reynolds; Julie Hildebrandt; Donald Chapa; John Swanson; Robert Scott; David Brent Little).
[23] Dkt. Nos. 62 at 2; 67 at 2–3.
[24] Dkt. No. 32-1 Defendant Regional Director Jennifer Maya Deposition 7:23–9:7 ("Maya Dep.").
[25] Dkt. No. 60-1.
[26] Dkt. No. 32-3 Plaintiff Dep. 69:7–23.
[27] Dkt. No. 32-1 Maya Dep. 17:19–21.
[28] *Id.* 17:24-25.
[29] Dkt. No. 32; *see* Dkt. No. 32-8 (Rehab Service Matrix); *see also* Dkt. No. 32-3 Plaintiff Dep. 50:7–24.

All of Defendant's Texas facilities have a 90% productivity expectation,[30] although individual facilities have discretion to set productivity goals based on factors unique to that facility.[31] The individual productivity requirements for Plaintiffs ranged from 88% to 100%, with only one Plaintiff reporting a productivity goal below 90%.[32]

The rules regarding which activities are billable are "the same for each discipline at each facility."[33] Non-billable work must be performed by all five therapist positions.[34] All five positions share basic similarities: each must perform ordered courses of treatment and document patients' progress regarding these treatments.[35] However, each position provides a different type of therapeutic treatment. SLPs work on speech rehabilitation,[36] PTs and PTAs provide physical therapy,[37] OTs and COTAs are responsible for occupational therapy.[38] The assistant positions, PTAs and COTAs, have similar job responsibilities as the therapist positions, but there are some tasks that they cannot perform, and they have less responsibility for paperwork.[39]

Non-billable work could include things such as conferring with nursing staff, completing paperwork, team meetings, and conferring with family members.[40] In some circumstances, some non-billable work could be completed at the same time as a billable task by multi-tasking; for example, by completing a non-billable task—such as paperwork—at the same time the patient was engaged in a billable task, such as a therapy technique that does not require active monitoring.[41]

[30] Dkt. No. 32-1 Maya Dep. 11:15–23; 32-2 Defendant Chief Operating Officer Carmen Vitton Deposition 38:3 ("Vitton Dep.").
[31] Dkt. No. 32-2 Vitton Dep. 38:24–39:3.
[32] Dkt. No. 62 at 3 (citing Dkt. No. 62-1 & 62-2); Dkt. No. 67 at 15–16 (citing Dkt. No. 67-5).
[33] Dkt. No. 32-2 Vitton Dep. 46:5–10.
[34] See Dkt. No. 32-8.
[35] Id.
[36] See Dkt. No. 32-3 Plaintiff Dep. 22:19–24:4.
[37] See Dkt. No. 32-4 Opt-in Plaintiff Kathryn Campbell Deposition 49:3–51:8 ("Campbell Dep.").
[38] See Dkt. Nos. 32-7 Opt-in Plaintiff Reanna McNames Deposition 56:1–57:1 ("McNames Dep.").
[39] See Dkt. No. 32-3 Plaintiff Dep. 119:9–16; Dkt. No. 32-7 McNames Dep. 58:16–59:6.
[40] See Dkt. No. 32-8; see also Dkt. No. 32-3 Plaintiff Dep. 51:7–53:1.
[41] See e.g., Dkt. No. 32-4 Campbell Dep. 52:1–53:13; Dkt. No. 32-6 Opt-in Plaintiff Sophia Silva Deposition 75:2–76:9 ("Silva Dep."); Dkt. No. 32-9 Dkt. No. 32-9 Jubenal Garcia Deposition 45:4–24 ("J. Garcia Dep.").

In light of this structure, and evidence Plaintiffs presented of discipline for failing to meet the productivity requirements, regular off-the-clock work by Plaintiffs, and evidence that Defendant knew or should have known off-the-clock work was occurring, the Court conditionally certified the collective and allowed notice to be sent to potential Plaintiffs.[42]

Now Defendant moves for partial summary judgment and to dismiss certain Plaintiffs and to decertify this collective action.[43] The motions are ripe for consideration. The Court turns to its analysis.

## II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331.

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT

### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court shall award summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[44] One principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses" and should be interpreted to accomplish this purpose.[45]

To earn summary judgment, the movant must demonstrate that there are no disputes over genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[46] "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."[47] The movant

---

[42] Dkt. No. 35.
[43] Dkt. Nos. 59 & 62.
[44] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).
[45] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[46] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).
[47] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *quoted in Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006)

"bears the initial burden of . . . demonstrat[ing] the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[48] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[49] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[50] and must "articulate precisely how this evidence supports his claim."[51] If the movant fails to meet its initial burden, the motion for summary judgment "must be denied, regardless of the nonmovant's response."[52] Accordingly, the Court may not enter summary judgment by default,[53] but may accept a movant's facts as undisputed if they are unopposed.[54]

If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts" that demonstrate the existence of a genuine issue for trial.[55] The nonmovant's "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary

---

(holding that, if the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements").

[48] *Lynch Props. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).

[49] *Celotex Corp.*, 477 U.S. at 325; *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.").

[50] FED. R. CIV. P. 56(c)(1); *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").

[51] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[52] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

[53] *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

[54] *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see* LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition").

[55] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.").

judgment."[56]   The nonmovant is "*required* to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[57]  "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."[58] The nonmovant's demonstration cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[59] and a "mere scintilla of evidence" also will not do.[60] "That is, the nonmoving party must adduce evidence sufficient to support a jury verdict."[61]

"A fact is 'material' if its resolution could affect the outcome of the action,"[62] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[63] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[64]  "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[65]  The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[66] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual

---

[56] *RSR Corp.*, 612 F.3d at 857.

[57] *Ragas*, 136 F.3d at 458 (emphasis added).

[58] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and alteration omitted) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case.").

[59] *United States ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

[60] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).

[61] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[62] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).

[63] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

[64] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[65] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

[66] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

controversy, that is, when both parties have submitted evidence of contradictory facts."[67] The Court will draw only *reasonable* inferences in the nonmovant's favor and will not countenance "senseless" theories or leaps in logic.[68] The Court is under no duty to sift through the entire record in search of evidence to support the nonmovant's opposition to summary judgment.[69] The Court does not "assume in the absence of any proof … that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[70]

**b. Analysis**

In Defendant's motion for partial summary judgment, it requests the Court grant summary judgment in its favor and dismiss (1) thirteen Plaintiffs who have presented no evidence of damages; (2) six[71] of seven Plaintiffs[72] that failed to respond to discovery; and (3) Plaintiffs' claim that Defendant willfully violated the FLSA and thus twenty-one total Plaintiffs whose claims are precluded under the two-year statute of limitations.[73] The Court considers each request separately.

*1. Plaintiffs that present no evidence of damages*

Defendant seeks summary judgment and dismissal of thirteen opt-in Plaintiffs who presented no evidence of damages.[74] Plaintiffs are unopposed.[75] In support of its request,

---

[67] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).
[68] *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468–69 & n.14 (1992).
[69] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).
[70] *Boudreaux*, 402 F.3d at 540 (quotation omitted) (emphasis in original).
[71] Defendant agreed to exclude Plaintiff Jameson Chambers, who also did not respond to discovery, from its motion to dismiss upon information and belief that he is deceased. *See* Dkt. No. 59 at 2, n. 1.
[72] There is overlap between the Plaintiffs Defendant seeks to dismiss for no damages and those it seeks to dismiss for failure to respond to discovery. *See* Dkt. No. 59.
[73] Dkt. No. 59 at 1.
[74] Dkt. No. 59 at 9 & 12, ¶ B.
[75] Dkt. No. 68 at 1.

Defendant provides that "Plaintiffs' economic expert Dr. Liesl Fox and Defendant's expert Dr. J. Michael DuMond agree that 11 Plaintiffs would have no claim to any unpaid overtime whatsoever during the maximum limitations period that applies if Plaintiffs establish a willful violation of the FLSA."[76] In support of dismissal of the two additional Plaintiffs, Defendant provides that "the number of Plaintiffs without damages grows to 13 when the parties' tolling agreement—which Plaintiffs did not provide to their damages expert—is properly factored into the three-year limitation period."[77] These Plaintiffs are:

1. Rhianna Acheson,
2. Colette Boyd,
3. Lana Crenshaw,
4. Chavita Green,
5. Deunta Jenkins,
6. Paul Mendiola,
7. Jennifer Mensah,
8. Marsha Moneyheffer,
9. Tracy Nolan,
10. Vannoy Lin Reynolds,
11. Jorgina Tamplen,
12. Lula Gordon,
13. Taryn Trason.[78]

Plaintiffs offer no evidence of damages to defeat summary judgment and, in fact, do not object to the dismissal of the above-listed Plaintiffs from this suit.[79] Plaintiffs, however, request that the thirteen Plaintiffs be dismissed without prejudice because they are opt-in Plaintiffs.[80] As a general rule, any dismissal—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits, unless the Court orders otherwise.[81] Plaintiffs argue that "given the remedial purposes of the FLSA and the fact that these individuals are opt-in plaintiffs in a collective actions," that the Court dismiss them without prejudice.[82] In Defendant's reply, it argues that dismissal should be with prejudice because these Plaintiffs

---

[76] Dkt. No. 59 at 2–3.
[77] *Id.* at 3.
[78] Dkt. Nos. 59 at 12; 68 at 4.
[79] Dkt. No. 68 at 4.
[80] *Id.*
[81] Fed. R. Civ. P. 41(b).
[82] Dkt. No. 68 at 4.

"concede they have no damages;"[83] Plaintiffs have been joined in this case since August of 2019 and earlier;[84] and "all 13 Plaintiffs are former employees who had left the Company prior to September 5, 2020 when Dr. Fox's estimation period ended [and thus] cannot accrue new entitlement to off-the-clock damages against [Defendant] . . . ."[85] In light of this and because the case has now reached the summary judgment stage, though they are opt-in Plaintiffs, the Court does not find dismissal without prejudice warranted.

Accordingly, the Court **GRANTS** summary judgment in favor of Defendant and **DISMISSES** the claims and causes of action of the following thirteen Plaintiffs **with prejudice**:

1. Rhianna Acheson,
2. Colette Boyd,
3. Lana Crenshaw,
4. Chavita Green,
5. Deunta Jenkins,
6. Paul Mendiola,
7. Jennifer Mensah,
8. Marsha Moneyheffer,
9. Tracy Nolan,
10. Vannoy Lin Reynolds,
11. Jorgina Tamplen,
12. Lula Gordon,
13. Taryn Trason.[86]

The Court now turns to the Defendant's request to dismiss Plaintiffs that did not respond to discovery.

2.      *Plaintiffs that did not respond to discovery*

Second, Defendant seeks summary judgment and dismissal with prejudice of six opt-in Plaintiffs—Wendy Adamo, Ballah Burch, Michelle Cole, Lula Gordon, Deunta Jenkins, and Taryn Trayson—because by failing to respond to discovery they present no evidence of damages.[87] The Court already dismissed Lula Gordon, Deunta Jenkins, and Taryn Trayson on other bases.[88]

---

[83] Dkt. No. 71 at 1.
[84] *Id.* at 3 (citing Dkt. Nos. 41–44).
[85] *Id.* (citing Dkt. No. 61-4 at 2 (Fox Report) & Dkt. No. 60-1 (Opt-In Employment Data)).
[86] Dkt. Nos. 59 at 12; 68 at 4.
[87] Dkt. No. 59 at 6.
[88] *See supra* p. 9–10.

Accordingly, the Court now only considers Defendant's request as to three Plaintiffs—Wendy Adamo, Ballah Burch, and Michelle Cole.

Specifically, Defendant alleges that because these three Plaintiffs failed to respond to discovery, they are subject to dismissal under Rule 41(b) or, alternatively, Rule 56 "for lack of evidence of any claim for liability or any damages."[89] Under Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."[90] Because Defendant did not first seek less harsh sanctions, the Court does not find dismissal under Rule 41(b) warranted[91] but reviews Defendant's request under Rule 56.

Plaintiffs argue that they should not be dismissed because Plaintiffs are allowed to use "representative proof" at trial."[92] While this is largely true,[93] representative proof is not always sufficient.[94] Here, the schedules of the opt-in Plaintiffs vary to such an extent that while some offer evidence to establish tens of thousands of dollars in damages,[95] others have no evidence of any damages under the FLSA.[96] In *Von Friewalde*, the Fifth Circuit found that, in a case in which the details of the plaintiffs' claims varied significantly, "the claims of all those appellants who [had] not produced any evidence at all ... necessarily fail[ed]" because those appellants had numerous opportunities to provide deposition testimony, affidavits, documents, or answers to interrogatories

---

[89] Dkt. No. 59 at 6.
[90] Fed. R. Civ. P. 41.
[91] *See Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982) (quoting *Pond v. Braniff Airways, Inc.*, 453 F.2d 347, 349 (5th Cir. 1972)) (This circuit has consistently held that Rule 41(b) dismissals with prejudice will be affirmed only upon a showing of "'a clear record of delay or contumacious conduct by the plaintiff,' ..., and where lesser sanctions would not serve the best interests of justice.").
[92] Dkt. No. 68 at 5 (citing *Snively v. Peak Pressure Control, LLC*, 347 F.Supp.3d 294, 300 (W.D. Tex. 2018)).
[93] *Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 806–807 (5th Cir. 2011).
[94] *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed.Appx. 448 (5th Cir.2009).
[95] *See* Dkt. No. 67 at 2 (citing Dkt. No. 66-2).
[96] *See* Dkt. No. 68 at 3–4.

in support of their claims.[97]  Here, these three Plaintiffs do not even provide a simple affidavit but merely cite to an authority regarding "representative evidence." They point to no evidence in the record to establish the damages of the three nonresponsive Plaintiffs.  Because the damages for each Plaintiff may vary significantly, without testimony from these individual Plaintiffs or other evidence to establish their specific damages,[98] these Plaintiffs fail to meet their burden. Accordingly, because Plaintiffs point to no evidence in the record to establish damages for the three non-responding Plaintiffs, the Court finds summary judgment warranted as to the claims of these three Plaintiffs. While the Court also notes that Defendant allegedly waited until the end of the discovery period to serve its discovery requests, in the summary judgment context, Plaintiffs have the burden of proof. Even an affidavit from these three Plaintiffs might suffice. Thus, Defendant's late discovery does not persuade the Court that dismissal without prejudice is merited under these circumstances.

Based on the foregoing, the Court **GRANTS** summary judgment in favor of Defendant and **DISMISSES** all claims and causes of action of Wendy Adamo, Ballah Burch, and Michelle Cole **with prejudice**.

### 3.  *Plaintiffs' claim that Defendant's violations were willful*

Lastly, Defendant seeks summary judgment on the issue of FLSA willfulness, arguing that Plaintiffs' claims should not be entitled to the extended three-year statute of limitations period for "willful" violations of the FLSA because Plaintiffs failed to meet their burden.[99] Specifically, Defendant argues that Plaintiffs provide no evidence that Defendant "actually knew it violated the FLSA or showed reckless disregard for FLSA compliance."[100] Plaintiffs bear the burden of

---

[97] *Albani.*, 444 F. App'x at 807 (quoting *Von Friewalde*, 339 Fed. App'x. at 456).
[98] *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 at 1331 (5th Cir.1985).
[99] Dkt. No. 59 at 13.
[100] *Id.* at 14.

demonstrating willfulness.[101]  To prove willfulness, Plaintiffs must provide evidence to establish that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."[102]  The presence of policies disallowing off-the-clock work do not prevent a finding of willfulness.[103]  A defendant may not "hide behind its official policy regarding off-the-clock work, when faced with substantial evidence that this policy is not being followed."[104]

In support of its argument, Defendant points out a series of its policies and procedures in which it required employees to report all time worked and made misrepresentation or falsification of time worked a "serious disciplinary violation."[105]  However, Plaintiffs point to testimony from various Plaintiffs that management not only knew they were working "off-the-clock" but instructed them to meet productivity even if it meant working "off-the-clock" to do so.[106]  This certainly supports their contention that supervisors knew or recklessly disregarded that their employees were working off the clock. The Court reminds the parties that in summary judgment, the Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant.[107]  The Court's role is only to determine whether there is sufficient evidence to create a genuine issue of fact to be resolved by the jury. Here, Plaintiffs have pointed to sufficient evidence in the record to raise a genuine issue of whether Defendant willfully violated the FLSA. Accordingly, the Court finds that Plaintiffs have met their burden to demonstrate a genuine issue of fact as to Defendant's willfulness in violating the FLSA.

---

[101] *Zannikos v. Oil Inspections* (U.S.A.), Inc., 605 F. App'x 349, 360 (5th Cir. 2015) (citing *Cox v. Brookshire Grocery Co*., 919 F.2d 354, 356 (5th Cir.1990)).

[102] *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

[103] *See* Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 356 (S.D. Tex. 2008).

[104] *Id.*; *see also* Dkt. No. 35 at 18.

[105] Dkt. No. 59 at 17 (citing Dkt. No. 60 ("Defendant's Statement of Undisputed Facts in Support of Defendant's Motion for Partial Summary Judgment").

[106] Dkt. No. 68 at 7–9 (citing Dkt. Nos. 68-2–68-13).

[107] *Williams, supra* note 66.

For the foregoing reasons, Defendant's motion for summary judgment on the issue of willfulness under the FLSA is **DENIED**.

### IV. MOTION FOR DECERTIFICATION

The Court now turns to consider Defendant's motion for decertification.[108] Therein, Defendant argues that this action should be decertified because "Plaintiffs are not 'similarly situated,'" which it contends is supported by the Fifth Circuit's recent decision in *Swales v. KLLM Transport Services, LLC*.[109] In Plaintiffs' response, they argue that the *Swales* decision does not affect the "decertification standards for an already certified case," and that they are sufficiently similarly situated to proceed collectively.[110] In this Court's opinion conditionally certifying this action, the Court followed the majority two-step approach typified by *Lusardi v. Xerox Corp.*[111] At that time, the Fifth Circuit had not specifically addressed at what stage courts should determine whether employees are "similarly situated," but had upheld cases applying the *Lusardi* "two-step ad hoc method for making this determination."[112] In *Swales*, following this Court's conditional certification of this case, the Fifth Circuit squarely rejected the *Lusardi* approach.[113] Accordingly, the Court considers the instant motion in light of the approach set out in *Swales*.

---

[108] Dkt. No. 62.

[109] Dkt. No. 62 at 3 & 17; *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021).

[110] Dkt. No. 67 at 1 & 4.

[111] Dkt. No. 35 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)); *see Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987).

[112] Dkt. No. 35 at 4 (citing *Mooney*, 54 F.3d at 1213); *see Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011); *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008) (citing *Mooney*, 54 F.3d at 1213; *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir.2001); *Hipp v. Liberty Nat. Life. Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir.2001)).

[113] *Swales,* 985 F.3d at 441.

a. **Legal Standard**

To proceed as a collective action for unpaid overtime wages, putative class members must be "similarly situated."[114] The ultimate inquiry in determining whether a collective is "similarly situated" is "whether the merits questions can be answered collectively."[115] "Instead of adherence to *Lusardi*, or any test for 'conditional certification,' a district court should identify . . . what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'"[116] This requires a nuanced analysis. In determining whether the merits questions can be answered collectively, the court must consider all available evidence and need "not ignore that evidence to avoid using it for the wrong purpose."[117] Thus, despite this Court's initial conditional certification of this case as a collective action, the Court considers all evidence to determine whether it should proceed as such.

"If answering [the merits] question requires a highly individualized inquiry into each potential opt-in's circumstances, the collective action would quickly devolve into a cacophony of individual actions," weighing against proceeding collectively.[118] On the other hand, as the Ninth Circuit pointed out, "[i]f the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment."[119] Furthermore, while "at least one Circuit has concluded that the 'similarities necessary to maintain

---

[114] 29 U.S.C. § 216(b).

[115] *Swales*, 985 F.3d at 442.

[116] *Swales,* 985 F.3d at 441.

[117] *Id.* ("After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be "similarly situated" for purposes of answering whether they are in fact employees, or at least that Plaintiffs have not met their burden of establishing similarity.").

[118] *Id.*; *Watson v. Travis Software Corp*., No. CIV.A. H-07-4104, 2008 WL 5068806, at *4 (S.D. Tex. Nov. 21, 2008) (quoting *England v. New Century Fin. Corp*., 370 F. Supp. 2d 504, 507 (M.D. La. 2005) ("A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.").

[119] *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114–1115 (9th Cir. 2018) ("Similarly, in the collective action context, what matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution.").

a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions,'"[120] courts have repeatedly stressed that Plaintiffs need only be similarly—not identically—situated to proceed collectively.[121] "Several courts have held that putative class members must show they were affected by a common policy, plan, pattern or practice . . ." to meet the similarly situated requirement.[122] For example, "[g]eographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy."[123] Where "there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate."[124] Furthermore, the presence of an official policy against off-the-clock work does not defeat certification if the plaintiff provides substantial evidence that regular off-the-clock work

---

[120] *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008) (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir.2007)).

[121] *Id.* (citing *Hipp v. Liberty Nat. Life. Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir.2001); *Reyes v. Texas Ezpawn, L.P.*, No. V–3–128, 2007 WL 101808, at *1 (S.D.Tex. Jan. 8, 2007); *Hill v. Muscogee County School Dist.*, 2005 WL 3526669, at *2 (M.D.Ga.2005); *Basco v. Wal–Mart Stores, Inc.*, No. Civ. A. 00–3184, 2004 WL 1497709, at *5 (E.D.La. July 2, 2004); *Frank v. Capital Cities Communications*, Inc., No. 80–CIV–2188–CSH, 1983 WL 643, at *2 (S.D.N.Y. Oct. 11, 1983).

[122] *Falcon*, 580 F. Supp. 2d 528, 535–6 (citing, e.g., *Aguirre v. SBC Communications, Inc*., No. Civ.A. H–05–3198, 2006 WL 964554, at *5 (S.D.Tex.2006) (noting that, at least at the first step, "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.") (citing *England v. New Century Fin. Corp*., 370 F.Supp.2d 504, 507 (M.D.La.2005)), *Hill v. Muscogee County School Dist*., 2005 WL 3526669, at *3 (M.D.Ga.2005) ("[I]f there is sufficient evidence of an employer's pattern of subjecting employees to the same improper practice, that would be sufficient to warrant a finding of similarity justifying collective adjudication."); *O'Brien v. Ed Donnelly Enterprises, Inc*., No. 2:04–CV–00085, 2006 WL 3483956, at *3 (S.D.Ohio Nov. 30, 2006) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs." (internal citations omitted)); *Bonilla v. Las Vegas Cigar Co*., 61 F.Supp.2d 1129, 1139 n. 6 (D.Nev.1999) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice." (internal citations removed)); *Caballero v. Kelly Servs., Inc*., No. CV H-14-1828, 2015 WL 12732863, at *3 (S.D. Tex. Oct. 5, 2015) (citing *McKnight v. D. Houston, Inc*., 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (Rosenthal, J.)) (". . . a key consideration is that to be 'similarly situated,' there must be 'substantial allegations that potential members 'were together the victims of a single decision, policy, or plan.'"); *Wofford v. Seba Abode, Inc*., No. 2:20-CV-00084-RJC, 2021 WL 3113215, at *4 (W.D. Pa. July 22, 2021) (quoting *Zavala v. Wal Mart Stores Inc*., 691 F.3d 527, 538 (3d Cir. 2012)) ("Being similarly situated 'means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA.'").

[123] *Vargas v. Richardson Trident Co*., 2010 U.S. Dist. LEXIS 15104, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (collecting cases).

[124] *Heeg v. Adams Harris, Inc*., 907 F. Supp. 2d 856, 863 (S.D. Tex. 2012).

is occurring.[125] "The bottom line is that the district court has broad, litigation-management discretion here."[126]

**b. Analysis**

The basic question now before the Court is whether Plaintiffs are similarly situated. In making this determination, the Court first reviews its bases for conditionally certifying the collective in this action and additional evidence collected since conditional certification. The Court will then turn to determine the central merits questions in this case. Following this analysis, the Court will consider whether Plaintiffs are similarly situated in relation to the merits questions in this case.

*1. Conditional Certification*

Because of the complex nature of the case, before conditionally certifying the collective, the Court ordered preliminary discovery to determine the "merits of the substantive claims" in this case.[127] Following the first phase of discovery, the Court conducted an in-depth evaluation of the evidence collected in the first phase of discovery to determine whether the merits questions could be answered collectively.[128] Upon review of the evidence, the Court certified the collective in this case, allowing Plaintiff to send notice to all therapists[129] who have been employed by Defendant at any time since March 8, 2015 at any of Defendant's skilled nursing facilities in the state of Texas.[130] In the Court's order conditionally certifying the collective in this case, the Court

---

[125] *See e.g., Falcon v. Starbucks Corp.,* 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) (conditionally certifying a collective class despite the fact that Starbucks had an official "time worked is time paid" policy); *see also Johnson v. RGIS Inventory Specialists,* 554 F. Supp. 2d 693, 709 (E.D. Tex. 2007) ("When an employer knows or has reason to believe that an employee is working for the employer's benefit, the time spent by the employee is work time, even if the work was not requested.").

[126] *Swales,* 985 F.3d at 443.

[127] Dkt. No. 27.

[128] Dkt. No. 35.

[129] I.e. Speech language pathologists, physical therapists, physical therapist assistants, occupational therapists, and certified occupational therapists.

[130] Dkt. No. 35 at 21.

determined that Plaintiffs met their burden of demonstrating the putative class members were victims of a single policy such that moving forward as a collective class was in the interest of judicial economy.[131]

### 2. Additional Evidence since Conditional Certification

Since the Court initially certified the collective in this case, another forty-five opt-in Plaintiffs joined the five original Plaintiffs—one named Plaintiff and four Opt-ins—in the case.[132] During Phase I of discovery, Plaintiff Loy and the four original opt-in Plaintiffs all provided sworn testimony in depositions.[133] In Phase II of discovery, Defendant declined to conduct any depositions and instead sent interrogatories to the additional opt-in Plaintiffs.[134] Of the total forty-five additional opt-in Plaintiffs, thirty-eight provided sworn responses to Defendant's interrogatories.[135] Above, the Court dismissed thirteen Plaintiffs, all of whom were found to have no damages.[136] The Court also dismissed three additional Plaintiffs who did not respond to the Defendant's discovery requests and presented no controverting evidence of damages.[137] In addition to the interrogatory responses, additional evidence collected during Phase II of discovery

---

[131] *Id.*

[132] *See* Dkt. Nos. 40–48 (Notice of Consent forms signed by Michelle Cole; Jeremy P. Lawson; Mardel Hollie Weger; Wendy Adamo; Cara Bradford; Sharon G. Burns; Mary Camposano; Lana Crenshaw; Ryan Degerstrom; Holly Gates; Chavita Green; Deunta Jenkins; Angela La Manna; Jameson Lee; Eyvonnia McCrary-Taylor; Sheena McLaurin; Lanita Meadows; Paul Mendiola; Jennifer Mensah; Marsha Moneyheffer; Trislyn Palmer; Mattie L. Rogers; Debra Smith; Jorgina Tamplen; Courtney Warren; Colette K. Boyd; James Chambers, Jr.; Lula Gordon; Ricardo Macias; Todd Piatt; Mary Picardi; Leigh A. Strolis; Veronica Zubowski; Mindy Barry; Tracy Nolan; Taryn Trason; Keri Johnson; Ballah Burch; Rhianna Acheson; Vannoy Lin Reynolds; Julie Hildebrandt; Donald Chapa; John Swanson; Robert Scott; David Brent Little).

[133] Dkt. No. 67 at 5; *see* Dkt. Nos. 32-3; 32-4; 32-5; 32-6; 32-7.

[134] Dkt. No. 67 at 1.

[135] Dkt. Nos. 62 at 2; 67 at 2–3; 5.

[136] *See supra* p. 10.

[137] *See supra* p. 12.

includes the reports and depositions by Dr. John Michael DuMond, Defendant's expert[138] and Dr. Liesl Fox, Plaintiffs' expert.[139]

### 3. The merits questions

To determine whether the collective should proceed in this case, the Court must determine what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated."[140] To do so, the Court first looks to Plaintiffs' live pleadings and relevant law to outline the merits questions in this case.

In their original complaint, Plaintiffs bring collective claims against Defendant under 29 U.S.C. §§ 201, *et seq.*, alleging that Defendant failed to pay overtime and that Defendant acted willfully and with reckless disregard of the provisions of the FLSA.[141] Under Section 207 of the FLSA, employers are required to pay all non-exempt employees at least one and a half times their regular rate of pay for hours worked in excess of forty hours per week.[142] An employer that violates section 207 is liable for the unpaid overtime compensation and "an additional equal amount as liquidated damages."[143] "An employer must compensate employees for all work it *suffers* or *permits*."[144] Management has a duty to "exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them."[145] If the "'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for

---

[138] Dkt. No. 62-2.
[139] Dkt. No. 62-4. Excluded by order of the Court. Dkt. No. 106.
[140] *Swales*, 985 F.3d at 441.
[141] Dkt. No. 1 at 4.
[142] 29 U.S.C. § 207(a)(1).
[143] Id. at § 216(b).
[144] Falcon, 580 F. Supp. 2d 528, 534 (citing 29 U.S.C. 203(g)) (emphasis added).
[145] 29 C.F.R. § 785.13.

the overtime hours is not a violation of § 207.'"[146] However, the employee will "not be estopped from claiming additional overtime if '[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate.'"[147]

The factual basis for Plaintiffs' claims is that Defendant set onerous productivity requirements as a percentage of time worked which could not be met. As a result, according to Plaintiffs, the SLPs, PTs, PTAs, OTs, and COTAs were required to complete non-billable time off-the-clock in order to satisfy the productivity requirement.

Accordingly, the central merits issue in this case is whether SLPs, PTs, PTAs, OTs, and COTAs were all subject to a productivity requirement that could only be accomplished by working off-the-clock.

### 1. Whether Plaintiffs are similarly situated in relation to the merits of the case

In support of proceeding collectively, Plaintiffs point to evidence that 1) all Plaintiffs faced high productivity requirements;[148] 2) widespread unreported overtime was occurring as a result of Defendant's high productivity demands;[149] and 3) that several of Defendant's managers and directors were aware of the practice and some even explicitly encouraged unreported overtime as

---

[146] *Von Friewalde,* 339 F. App'x at 455 (citing *Newton*, 47 F.3d at 748 (quoting *Forrester*, 646 F.2d at 414); *Harvill*, 433 F.3d at 441).

[147] *Newton*, 47 F.3d at 748 (citing *Brumbelow v. Quality Mills, Inc*., 462 F.2d 1324, 1327 (5th Cir.1972)).

[148] *See* Dkt. No. 32-3 Loy Dep. 107:13-109:13;  Dkt. No. 32-4 Campbell Dep. 89:7–90:16;  Dkt. No. 32-5 Garcia Dep. 48:10–24;  Dkt. No. 32-6 Silva Dep. 83:23–85:19;  Dkt. No. 32-7 McNames Dep. 40:2–14;  Dkt. No. 67-5 at 2; Dkt. No. 67-6 at 2; Dkt. No. 67-7 at 2; Dkt. No. 67-8 at 2; 67-9 at 2; Dkt. No. 67-10 at 2; Dkt. No. 67-11 at 2; Dkt. No. 67-12 at 2; Dkt. No. 67-13 at 2; Dkt. No. 67-14 at 2; Dkt. No. 67-15 at 2; Dkt. No. 67-16 at 2; Dkt. No. 67-17 at 2; Dkt. No. 67-18 at 2; Dkt. No. 67-19 at 2; Dkt. No. 67-20 at 2; Dkt. No. 67-21 at 2; Dkt. No. 67-22 at 2; Dkt. No. 67-23 at 2; Dkt. No. 67-24 at 2; Dkt. No. 67-25 at 2; Dkt. No. 32-3 Plaintiff Dep. 100:2–6; Dkt. No. 32-12 (Collective Exhibit of Weekly Team Meeting Agendas); Dkt. No. 32-1 Maya Dep. 11:15–23;  32-2 Defendant Chief Operating Officer Carmen Vitton Deposition 38:3;  38:24–39:3  ("Vitton Dep.").

58 Dkt. No. 32-2.

[149] *See* Dkt. No. 32-3 Loy Dep. 107:13-109:13;  Dkt. No. 32-4 Campbell Dep. 89:7–90:16;  Dkt. No. 32-5 Garcia Dep. 48:10–24;  Dkt. No. 32-6 Silva Dep. 83:23–85:19;  Dkt. No. 32-7 McNames Dep. 40:2–14;  Dkt. No. 67-5 at 2; Dkt. No. 67-6 at 2; Dkt. No. 67-7 at 2; Dkt. No. 67-8 at 2; 67-9 at 2; Dkt. No. 67-10 at 2; Dkt. No. 67-11 at 2; Dkt. No. 67-12 at 2; Dkt. No. 67-13 at 2; Dkt. No. 67-14 at 2; Dkt. No. 67-15 at 2; Dkt. No. 67-16 at 2; Dkt. No. 67-17 at 2; Dkt. No. 67-18 at 2; Dkt. No. 67-19 at 2; Dkt. No. 67-20 at 2; Dkt. No. 67-21 at 2; Dkt. No. 67-22 at 2; Dkt. No. 67-23 at 2; Dkt. No. 67-24 at 2; Dkt. No. 67-25 at 2; Dkt. No. 67-4.

a means of meeting the productivity requirements.[150] Plaintiffs provide evidence and Defendant's concede that each facility had a ninety percent productivity requirement.[151] Pursuant to this policy, on average, ninety percent of an employee's time must be billable, i.e. direct patient care. On average, the remaining ten percent was to complete all other duties, including record-keeping and attendance of meetings. Despite this, Defendant attempts to argue against the existence of the productivity policy, unconvincingly—and in some cases nonsensically—asserting that "a productivity goal is not a common unlawful policy or practice of off-the-clock work." Similarly, Defendant spends substantial time arguing about the proper terminology for the productivity policy, e.g. "requirement" versus "goal," and arguing Plaintiffs improperly characterize the policy as a "requirement."[152] However, the Court notes that in Defendant's own records, it refers to the policy as a "minimum productivity *requirement*."[153]

Defendant further argues that "Plaintiffs' choice to disregard lawful timekeeping requirements is not a common unlawful policy or practice."[154] Specifically, Defendant argues that the existence of policies requiring employees to record all hours worked and prohibiting misrepresentation and falsification of records negates Plaintiffs' allegations that the productivity policy resulted in widespread unrecorded overtime.[155] However, Plaintiffs have provided substantial evidence that unrecorded overtime was not simply occurring, but was encouraged,[156]

---

[150] *See* Dkt. No. 32-3 Loy Dep. 107:13-109:13;  Dkt. No. 32-4 Campbell Dep. 89:7–90:22;  Dkt. No. 32-5 Garcia Dep. 48:10–24;  Dkt. No. 32-6 Silva Dep. 83:23–85:19;  Dkt. No. 32-7 McNames Dep. 40:2–14;  Dkt. No. 67-5 at 2; Dkt. No. 67-6 at 2; Dkt. No. 67-7 at 2; Dkt. No. 67-8 at 2; 67-9 at 2; Dkt. No. 67-10 at 2; Dkt. No. 67-11 at 2; Dkt. No. 67-12 at 2; Dkt. No. 67-13 at 2; Dkt. No. 67-14 at 2; Dkt. No. 67-15 at 2; Dkt. No. 67-16 at 2; Dkt. No. 67-17 at 2; Dkt. No. 67-18 at 2; Dkt. No. 67-19 at 2; Dkt. No. 67-20 at 2; Dkt. No. 67-21 at 2; Dkt. No. 67-22 at 2; Dkt. No. 67-23 at 2; Dkt. No. 67-24 at 2; Dkt. No. 67-25 at 2; Dkt. No. 67-4; Dkt. No. 67-1.
[151] Dkt. No. 62 at 6; Dkt. No. 32-2 Vitton Dep. 38:24–39:3.
[152] Dkt. No. 62 at 1–7; 11–16.
[153] Dkt. No. 67-4.
[154] Dkt. No. 62 at 21 & 24.
[155] *Id.* at 5.
[156] *See* Dkt. No. 32–67, *supra* note 149.

and evidence of discipline or threatened discipline for failing to meet the productivity requirements.[157] While Defendant's record-keeping policies are in tension with its productivity policy, the presence of an official policy against off-the-clock work does not negate Plaintiffs' claims.[158] Furthermore, while Plaintiffs provide substantial evidence of unwritten practices surrounding the productivity policy, Defendant does not point to evidence regarding the enforcement or practices surrounding the record-keeping policy. Regardless, the collective effect of both policies as they relate to encouraging off-the-clock work is an issue of fact common to all Plaintiffs in this case.

Defendant further argues that "[w]here only a handful of Plaintiffs are regularly meeting productivity goals, there is no credible evidence that Plaintiffs were . . . working off-the-clock on a daily basis in order to inflate their productivity to a level that still fell short of the allegedly 'required' level."[159] However, in the face of substantial evidence that Plaintiffs worked unrecorded overtime as a result of the productivity policy,[160] this evidence does not negate Plaintiffs' claims. Furthermore, Plaintiffs testify that the pressure to meet the productivity requirements, even when they were unable to do so, caused them to regularly work "off-the-clock."[161] Whether the productivity policy resulted in widespread overtime is a question of fact common to all Plaintiffs' claims.

---

[157] *Id.*; Dkt. No. 67-4.
[158] *See e.g., Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) (conditionally certifying a collective class despite the fact that Starbucks had an official "time worked is time paid" policy); *see also Johnson v. RGIS Inventory Specialists,* 554 F. Supp. 2d 693, 709 (E.D. Tex. 2007) ("When an employer knows or has reason to believe that an employee is working for the employer's benefit, the time spent by the employee is work time, even if the work was not requested.").
[159] Dkt. No. 67 at 22.
[160] *See* Dkt. No. 32–67, *supra* notes 148–149.
[161] *Id.*; *see* e.g. Dkt. No. 32-4 at 24, 90:17–22 (Plaintiff affirms that she would "falsify [her] clock-in/clock-out records in order to get above or close to 95 percent than [she] otherwise would have.").

Defendant further argues that because Plaintiffs "worked in five different job titles, reporting to different managers at 29 different facilities at different times within the last six years;" worked different schedules;[162] had different "productivity 'requirements' ranging from 88% to 100%," Plaintiffs are not similarly situated.[163] The Court disagrees. While these are differences between Plaintiffs, they are not material to the merits questions in this case. Furthermore, the Court already considered these differences in job responsibilities and facilities in its original order certifying this case and found the Plaintiffs similarly situated.[164] Specifically, the Court found that:

> All facilities are impacted by the same 90% productivity requirement and all job descriptions had to meet this productivity requirement. Each job shares similar job responsibilities. Plaintiff has provided examples of therapists and assistants disciplined for failing to meet these requirements. Thus, employees in each of the five job descriptions are subject to the "same policy, decision, or plan." Although each job provides different therapy techniques, each job provides therapy to patients, the billing practices are generally the same for each, and each is required to log that information. Similarly, although the assistant positions, PTAs and COTAs, may have greater ease in satisfying the productivity requirement, these positions are still subject to the same productivity requirement. Thus, they are subject to the same time pressures.[165]

The additional evidence since Phase II discovery does not alter the Court's findings. Additionally, because Plaintiffs have provided evidence that they were all affected by the same company-wide policy, the fact that they worked at different locations is not a material difference.[166] Furthermore, the slight variation between the individual requirements between eighty-eight and ninety percent, similarly does not alter the Court's finding that Plaintiffs are similarly situated in relation to the merits issues in this case.

---

[162] The Court dismissed all Plaintiffs that failed to present evidence of unreported overtime, so Defendant's arguments regarding Plaintiff who do not qualify for overtime based on their schedules are moot. *See* Dkt. No. 67 at 3.

[163] Dkt. No. 62 at 2–3.

[164] Dkt. No. 35 at 7–8; 14–15.

[165] Dkt. No. 35 at 14 (citing Dkt. No. 32-1 Maya Dep. 11:15–23; 32-2 Vitton Dep. 38:3; Dkt. No. 32-8; Dkt. No. 32-11; *Mooney*, 54 F.3d at 1214 n.8).

[166] *Id.*; *see* Dkt. No. 67 at 15–16 (citing Dkt. Nos. 67-2; 67-26- 67-5; & 67-18); *see* Dkt. No. 62 at 3, n.2 (citing Dkt. No. 62-1); *see Vargas, supra* note 126.

Defendant further argues that Plaintiffs are not similarly situated because Plaintiffs' overtime claims range from thirty minutes per day to three hours per day.[167] While the individual proof of overtime will be required to prove Plaintiffs' individual damages, this evidence largely overlaps with the evidence Plaintiffs offer to support the collective allegations in this case.[168] Furthermore, the question of exactly how much overtime each Plaintiff worked is one of several issues in this case, the majority of which can be answered collectively. Additionally, any potential procedural challenges related to exact overtime calculations can be dealt with through other trial management mechanisms. Furthermore, the Court declines to consider Defendant's arguments regarding Plaintiffs with no qualifying overtime, as they have all been dismissed from the case, with the exception of one Plaintiff whom Defendant declined to seek to dismiss.[169] Because this evidence overlaps with the evidence presented in support of Plaintiffs' collective claims and collective issues prevail in this case, the Court does not agree that the need for individual overtime and damages calculations weighs against allowing Plaintiffs to proceed collectively.

For the foregoing reasons, and considering all available evidence in this case, the Court finds that Plaintiffs are similarly situated.

## 2. Defendant's individual defenses and procedural considerations

In addition to Defendant's arguments that Plaintiffs should not proceed collectively because they are not "similarly situated," Defendant argues that collective treatment is not appropriate "in light of [its] individual defenses"[170] and because "if this case proceeds collectively to trial, it will result in as many as 50 unmanageable mini-trials."[171] The Court notes that these

---

[167] Dkt. No. 62 at 3 (citing Dkt. No. 62-1).
[168] *See supra* notes 148–150.
[169] *See* Dkt. No. 59 at 2, n. 1.
[170] Dkt. No. 62 at 26.
[171] Dkt. No. 62 at 28.

arguments track the elements of the standard for decertification set out by *Lusardi*,[172] which was squarely rejected by the Fifth Circuit in *Swales*.[173] Nonetheless, the Court reviews Defendant's arguments.

Defendant argues that proceeding with this collective action would impede its due process rights.[174] Specifically, Defendant argues that the following "individualized defenses" require decertification:

> (1) particular class members did not in fact work off-the-clock; (2) if off-the-clock work occurred, some or all of it did not result in non-payment of FLSA overtime; (3) managers and supervisors did not know about the off-the-clock work; (4) any instructions received to work off-the-clock without compensation were made by individual managers outside the scope of authority and directly contrary to the Company's well-established policy and practice; (5) even if a particular class member did work off-the-clock, that employee unreasonably failed to avail themselves of the methods provided by Defendant to report and be compensated for that work; (6) plaintiffs had actual and/or constructive knowledge of Defendant's policies banning off-the-clock work and voluntarily chose to engage in such work in deviance of that policy; and (7) Some plaintiffs' claims are barred by statute of limitations or other technical deficiencies.[175]

The Court disagrees. Upon review of these defenses, the Court first notes that it has already dismissed all Plaintiffs who failed to provide evidence of qualifying overtime or off-the-clock work, as well as those Plaintiffs whose claims are barred by the statute of limitations. Furthermore, the remaining defenses largely apply to Plaintiffs' common claims. Notably, Defendant does not argue that these defenses apply to specific Plaintiffs, point to specific individualized evidence in support of these defenses, or otherwise explain how proceeding collectively would impede its

---

[172] *See Swales*, 985 F.3d at 437 (citing *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J.1987) ("(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations.").
[173] *Id.* at 441.
[174] Dkt. No. 62 at 27.
[175] Dkt. No. 62 at 27.

ability to prove these defenses. For the foregoing reasons, the Court does not find that proceeding with this collective action would impede Defendant's due process rights.

Next, Defendant argues that "if this case proceeds collectively to trial, it will result in as many as 50 unmanageable mini-trials."[176] The Court first notes that Defendant's proposed alternative would result in precisely what Defendant warns against here—a trial for each individual Plaintiff. Defendant specifically argues that decertification is necessary because individual damages require a case-by-case inquiry, resulting in procedural complexity.[177] FLSA collective actions "are intended to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."[178] A 216(b) collective action allows plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefits the judicial system through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."[179] The Court has already found that collective issues prevail in this case.[180] Furthermore, the evidence for the Plaintiffs' damages calculations largely overlaps with the evidence Plaintiffs' offer to prove the collective issues in this case.[181] If the Court were to decertify the present action, this would result in thirty-four near identical cases. This would result in decreased efficiency, higher costs for all parties, wasted judicial resources, and disregard the purposes of Section 216(b). In light of this, the Court does not agree that the potential procedural complexity resulting from

---

[176] Dkt. No. 62 at 28.

[177] *Id.*

[178] *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 227 (5th Cir. 2011) (internal quotations omitted).

[179] *Hoffmann*, 493 U.S. at 170; *see also Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003) ("Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer").

[180] *See supra*, page 26.

[181] *See supra* notes 148–150*see also supra*, page 20–21 ("whether Plaintiffs "performed work for which [they were] not properly compensated;" 2) whether Defendant "suffered or permitted" the work through either actual or *constructive* knowledge that Plaintiffs were working overtime; and 3) whether Defendant willfully or recklessly encouraged unreported overtime to occur.").

the need for individual damages calculations outweighs the certain inefficiency and waste of judicial resources that would result if each Plaintiffs' claim were tried separately.

For the foregoing reasons, and considering all available evidence in this case, the Court finds that Plaintiffs are similarly situated and permits Plaintiffs to proceed as a collective in this case. Defendant's motion to decertify[182] is **DENIED**.

## V. CONCLUSION AND HOLDING

Accordingly, the Court **DENIES** Defendant's motion to decertify. Furthermore, the Court **DENIES** in part and **GRANTS** in part Defendant's motion for partial summary judgment. Summary judgment is **DENIED** as to the claim for willful violation of the FLSA. Summary judgment is **GRANTED** in favor of Defendants as to the following opt-in Plaintiffs and their claims and causes of action are **DISMISSED with prejudice**:

1. Wendy Adamo,
2. Rhianna Acheson,
3. Colette Boyd,
4. Ballah Burch,
5. Michelle Cole,
6. Lana Crenshaw,
7. Chavita Green,
8. Deunta Jenkins,
9. Paul Mendiola,
10. Jennifer Mensah,
11. Marsha Moneyheffer,
12. Tracy Nolan,
13. Vannoy Lin Reynolds,
14. Jorgina Tamplen,
15. Lula Gordon,
16. Taryn Trason.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 2nd day of September 2021.

_____
Micaela Alvarez
United States District Judge

---

[182] Dkt. No. 62.