United States District Court
Southern District of Texas
**ENTERED**
November 09, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| VALERIE LOY, On Behalf of HERSELF and All Others Similarly Situated, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:18-cv-00004 |
| | § | |
| REHAB SYNERGIES, LLC, | § § | |
| Defendant. | § | |

## ORDER

The Court now considers "Plaintiffs' Motion and Memorandum for Attorney's Fees, Costs, and Expenses."[1] After duly considering the motion, Defendant's response, the record, and relevant authorities, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

### I.  BACKGROUND AND PROCEDURAL HISTORY

This is a Fair Labor Standards Act ("FLSA") collective action. In March 2022, a jury returned a verdict in favor of Plaintiffs[2] and on June 1, 2022, the Court entered final judgment in favor of Plaintiffs.[3] Plaintiffs timely filed a motion for attorneys' fees but due to Defendant's appeal to the Fifth Circuit, the Court stayed briefing related to attorneys' fees, costs and expenses until after the Fifth Circuit resolved the appeal and entered its mandate.[4]

In July 2023, the Fifth Circuit affirmed the judgment of the District Court.[5] The Court now turns to Plaintiffs' motion.

---

[1] Dkt. No. 212.
[2] Dkt. No. 155.
[3] Dkt. No. 173.
[4] Dkt. No. 190.
[5] Dkt. No. 210.

## II. MOTION FOR ATTORNEYS' FEES

### a. Legal Standard

The "American Rule" as articulated by the Supreme Court, is that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[6] The Supreme Court "will not deviate from the American Rule absent explicit statutory authority."[7] The FLSA provides a perfect example of "explicit statutory authority": a court "shall, in addition to any judgment awarded to the [plaintiffs], allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[8] The term "shall" makes such awards mandatory to prevailing FLSA claimants.[9]

Within the Fifth Circuit, "reasonable" attorney's fees are calculated using the Loadstar method,[10] and then altering this figure if necessary given the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*[11] However, the *Johnson* factors may be incorporated into the Loadstar calculation itself, in which case, a court does not need to engage in an independent *Johnson* analysis.[12]

The Loadstar Fee is calculated by multiplying a reasonable hourly billing rate by a reasonable number of hours expended on the litigation.[13] The reasonable hourly rate is primarily

---

[6] *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015).

[7] *Id.* (internal citations omitted).

[8] 29 U.S.C.A. § 216(b) (West).

[9] *See e.g.*, *Villegas v. Regions Bank*, 2013 WL 76719, at *2 (S.D. Tex. Jan. 4, 2013) (citing *Riddle v. Tex–Fin, Inc.*, 2011 WL 1103033, at *5 (S.D. Tex. Mar.22, 2011).

[10] *Strong v. Bellsouth Telecomm., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998).

[11] 488 F.2d 714, 717–19 (5th Cir. 1974). These factors include: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

[12] *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 803 (5th Cir. 2006).

[13] *Norsworthy v. Nguyen Consulting & Servs., Inc.*, 575 Fed. Appx. 247, 248 (5th Cir. 2014).

determined by "[t]he prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community . . . ."[14] Reasonable hours cannot be "excessive, redundant, or otherwise unnecessary . . . ."[15] "The fee applicant bears the burden of proving that the number of hours and the hourly rate for which compensation is requested is reasonable."[16]

### b. Analysis

Plaintiffs pray for this Court to award $1,130,581.75 in fees "with an interest rate of 2.02% per annum running from the date the Court entered its Final Verdict, June 1, 2022."[17]

### 1. Reasonable Rates

"Plaintiffs' counsel are seeking to be compensated at the following rates for their time spent in this litigation:"[18]

| Name | Title | Year admitted to practice | Hourly Rate |
|---|---|---|---|
| Roberto "Bobby" Ramirez | Partner | 1985 | $600 |
| Jerry E. Martin | Partner | 1999 | $600 |
| David W. Garrison | Partner | 2006 | $485 |
| Scott P. Tift | Partner | 2008 | $425 |
| Seth M. Hyatt | Associate | 2012 | $350 |
| Matthew E. McGraw | Associate | 2013 | $300 |
| Joshua A. Frank | Associate | 2014 | $285 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | Litigation Coordinator | N/A | $150 |

---

[14] *Villegas*, 2013 WL 76719, at *3 (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).
[15] *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997).
[16] *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).
[17] Dkt. No. 212 at 2.
[18] *Id.* at 8.

Plaintiffs argue that the rates are reasonable and appropriate for a case of this nature. Specifically, Plaintiffs urge the Court to consider expanding its consideration of what constitutes the relevant market for determining the prevailing rate, given the specialized nature of this suite.

In support of their arguments, Plaintiffs have provided the following declarations: [19]

- The declaration of [] counsel Jerry Martin, which identifies two specific instances in which federal courts in FLSA litigation have approved rates as high or higher than those requested here for the same attorneys;[20]
- The declaration of [] counsel Roberto "Bobby" Ramirez, which addresses the reasonableness of requested rates and counsel's degree of success based on his decades of experience as an attorney in the McAllen area;[21]
- The declaration of Houston-based attorney Justin Strother regarding the reasonableness of Plaintiffs' requested rates for a complex action such as this;[22]
- The declaration of attorney Peter Winebrake, who focuses the vast majority of his practice on FLSA collective actions; and[23]
- The declaration of former United States Attorney General Alberto Gonzalez, who opines as to the inherent complexity of litigating an FLSA action while a parallel and overlapping qui tam is pending under seal.[24]

Plaintiffs' provided affidavit from Houston FLSA attorney, Justin Strother, "notes that he personally charges and has regularly been paid at rates beyond the $600 per hour that Plaintiffs are seeking for Jerry Martin and Bobby Ramirez."[25] Further, Plaintiffs assert that similar rates have been upheld for these specific attorneys in the Middle District of Tennessee.[26] Thus, Plaintiffs urge the Court to find that rates of the relevant market where this Court sits in McAllen should include the entire Southern District of Texas, thereby encompassing Houston, or for the Court to consider Plaintiffs' Counsels' own market.

---

[19] Dkt. No. 222.
[20] Dkt. No. 217.
[21] Dkt. No. 216.
[22] Dkt. No. 214.
[23] Dkt. No. 215.
[24] Dkt. No. 213.
[25] *Id.* at 9. *See also* Dkt. No. 214.
[26] *Id.* (citing *Paine v. Intrepid*, No. 3:14-cv-2005 (M.D. Tenn. Jan. 6, 2017) and *Flatt v. LHC Group, Inc., et al.*, No. 2:16-cv-14 (M.D. Tenn. Mar. 1, 2017)).

As for the *Johnson* factors, Plaintiffs argue that several factors weigh in favor of their requested hourly rate. First, Plaintiffs assert that the "amount involved and the results obtained" in this case support their proposed hourly rates because,

> counsel took an FLSA collective to trial on behalf of more than twenty plaintiffs, **all** of whom had to appear and testify in order to be eligible to recover damages. And the jury not only found Rehab Synergies liable as to every testifying plaintiff, it found the company's conduct to be willful, extending the applicable statute of limitations by one year and entitling every testifying plaintiff to liquidated damages, for a total recovery to the collective of $443,795.34. This is, quite simply, an exceptional result.[27]

Second, Plaintiffs assert that the "novelty and difficulty of the questions" and "the skill required to perform the legal service properly" supports their proposed hourly rates.[28] Plaintiffs argue that "FLSA collective actions are inherently complex and difficult . . . [a]nd given that so few of them ever proceed to trial, any collective action that does go to trial will necessarily involve at least some degree of novelty."[29] Plaintiffs further assert that the "parallel *qui tam* action filed under the federal False Claims Act" made this case complicated even for a FLSA collective action.[30]

Finally, Plaintiffs argue that the fact that counsel agreed to be compensated on a contingent fee basis supports their proposed hourly rates. However, Plaintiffs make clear that they

> are not asking this Court for a lodestar **enhancement** based on the contingent nature of their representation. But it is certainly a factor that further supports the award of hourly rates at the upper end of the reasonableness—particularly given the size of the risk Plaintiffs' counsel assumed in having to litigate this case for so many years, and at significant expense, without any assurance of payment.[31]

---

[27] *Id*. at 11.
[28] *Id.* at 12.
[29] *Id.*
[30] *Id*. at 12-13.
[31] *Id.* at 15.

Generally, Defendant argues that Plaintiffs' proposed rates should be reduced because when "[t]aking into account the relevant legal community, Plaintiffs' rates are too high to be considered reasonable."[32] Thus, Defendant suggests that "[a] reduction to $500/hour for the two lead counsel, $400/hour for the other partners and $220 for the associates, and $100/hour for the 'litigation coordinators' is far more reasonable."[33]

Specifically, Defendant asserts that,

there is no evidence that Plaintiffs needed to obtain counsel from out-of-district at out-of-district rates in order to competently pursue their claims. In fact, one of Plaintiffs' declarants, attorney Justin Strother is an FLSA lawyer practicing within the district, as well as one of Plaintiffs' lead lawyers, Roberto Ramirez, belying any argument of a lack of competent local counsel within the district that would have necessitated out of state counsel. Rather, the lawyers doing work in this district should be compensated at Southern District of Texas rates and not Nashville rates.

Moreover, the context of counsel's prior approved rate is material and renders it inapposite here. The Nashville court's unwillingness to disturb an hourly rate that had been negotiated as the product of a mutual settlement agreement seeking unopposed approval by the court is not tantamount to this Court's independent evaluation of the proper market rate to award. Plaintiffs' counsel provide no evidence of having been awarded $600/hr by a court deciding a contested motion for fees to determine market rates.[34]

Defendant further argues that "Plaintiffs' analysis of the *Johnson* factors are [sic] flawed and do [sic] not support Plaintiffs' requested rates."[35] As to the "amount involved and the results obtained," Defendant argues that the outcome of this matter was not "exceptional" as Plaintiffs have asserted in their motion because "the original amount Plaintiffs asked the jury to award the 22 Testifying Plaintiffs was nearly $992,000, and the final award was just $433,795.34."[36] Additionally, "28 of the original 50 Plaintiffs were dismissed."[37]

---

[32] Dkt. No. 218 at 9.
[33] *Id.*
[34] *Id.* at 11.
[35] *Id.*
[36] *Id.* at 13-14.
[37] *Id.* at 14.

As to the "skill required and the novelty and difficulty of the questions," Defendant propounds that Plaintiffs' argument that the parallel *qui tam* action complicated this matter, "misses the boat."[38] First, Defendant claims that the *qui tam* action is entirely separate. Second, Defendant urges that "any other FLSA counsel who handled this case would not have had to manage this complication, because they would have been unaware of the separate, sealed *qui tam* action."[39] Thus, Plaintiffs' counsel should not "benefit from their own decision to handle both matters in parallel, rather than enlisting available, competent local counsel to handle the separate FLSA matter."[40]

Typically when the Court is determining the reasonableness of a requested rate, "the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."[41] "[T]he reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."[42] Yet, the district court has the requisite expertise to assess reasonable rates in the relevant community.[43]

However, the Fifth Circuit has also held that where "abundant and uncontradicted evidence" proves the necessity of "turning to out-of-district counsel," that counsel's "'home rates' should be considered as a starting point for calculating the lodestar."[44] Thus, when out-of-district counsel wishes for the Court to adopt an hourly rate from his own district, the Court must first

---

[38] *Id.* at 12.
[39] *Id.*
[40] *Id.* at 13.
[41] *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)(internal quotations omitted).
[42] *Id.* (citing *e.g., Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993)).
[43] *Al Asher & Sons, Inc. v. Foreman Elec. Serv. Co., Inc.*, No. MO:19-CV-173-DC, 2021 WL 799315 *at 4 (W.D. Tex. Feb. 1, 2021) (Citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976); *see also Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972)("The court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value.").
[44] *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 382 (5th Cir. 2011))..

determine if Plaintiffs have proven that hiring the out-of-district counsel was necessary before moving to an assessment of the reasonableness of the out-of-district rates.[45]

Here, Plaintiffs have provided affidavits that attest to the reasonableness of the requested rates both within the Southern District of Texas as well as the Middle District of Tennessee. Thus, if the Court finds the requested rates are reasonable within the relevant market in which this Court sits, the Court need not delve into whether the hiring of out-of-district counsel was necessary because said out-of-district counsel would then be paid at the reasonable rate in the community where this District Court sits. Thus, the Court first addresses whether the requested rates are reasonable for this community.

This Court sits in McAllen, Texas, a Division of the Southern District of Texas. Plaintiffs' only affidavit from an attorney in the McAllen area is from Roberto "Bobby" Ramirez, one of Plaintiffs' lead counsel.[46] Plaintiffs would like the Court to consider the declaration from a Houston based attorney as evidence of the reasonable hourly rate for the community in which this court sits. Therein, Attorney Justin Strother states that "attorneys with the requisite knowledge and experience to litigate FLSA claims on behalf of a multi-plaintiff collective are relatively few and far between" and that "for such cases, it is appropriate to look to the prevailing rates within the district as a whole rather than at any one city or metro area, as there are unlikely to be enough similar cases filed in any one area to allow for meaningful comparisons."[47]

However, the Court declines to consider Houston and McAllen the same legal community.[48] Houston is approximately 350 miles from McAllen and the two communities differ

---

[45] *Id.* at 383.
[46] Dkt. No. 216.
[47] Dkt. No. 214 at 5-6.
[48] *See Al Asher & Sons, Inc. v. Foreman Elec. Serv. Co., Inc.,* No. MO:19-CV-173-DC, 2021 WL 799315 at *4 (W.D. Tex. Feb. 1, 2021) ("The Court rules that the relevant market is the Midland/Odessa Division of the Western District of Texas, rather than the Western District of Texas as a whole.").

greatly. While not a highly dense populated area like Houston, the immediate community in which this Court sits is home to a population of nearly one million people, even before consideration of the larger international conurbation.[49] Hence, this is hardly a situation where the community in which this District Court sits lacks a large enough population to support a thriving legal community from which to consider a complete relevant market.

Thus, while the declaration from the Houston based attorney may or may not attest to the reasonable hourly rate for an attorney representing Plaintiffs in an FLSA matter in the Houston market, that declaration cannot speak to a reasonable hourly rate for an attorney representing Plaintiffs in an FLSA matter in the McAllen market.

As previously mentioned, the only affidavit from an attorney in the McAllen market is from Roberto "Bobby" Ramirez, one of Plaintiffs' lead counsel.[50] While "[p]roper evidence of a reasonable hourly rate includes an attorney's own affidavit presenting information as to the rates actually billed and paid in similar lawsuits[,]"[51] Mr. Ramirez' declaration provides no such information. Declarations such as "[m]y billing rate is $600.00 per hour in this case" and "[t]he billing rate for my work . . . is a customary rate in this type of matter" are conclusory and wholly insufficient to support the requested rate. Thus, the Court finds that Plaintiffs have not provided evidence of reasonable hourly rates for this community, the McAllen market.

Because the Court has now found that Plaintiffs have not provided evidence of reasonable hourly rates for the McAllen market, the Court now turns to the necessity of hiring out-of-district counsel which would allow the Court to consider that counsel's home rates. As previously mentioned, Attorney Justin Strother states in his declaration that he "believe(s) as a general matter

---

[49] *See* https://www.census.gov/quickfacts/fact/table/hidalgocountytexas/PST045222; https://www.census.gov/quickfacts/fact/table/starrcountytexas/PST045222.
[50] Dkt. No. 216.
[51] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 596 (S.D. Tex. 2011).

that attorneys with the requisite knowledge and experience to litigate FLSA claims on behalf of a multi-plaintiff collective are relatively few and far between."[52] However, this declaration is not sufficient for the Court to deem the hiring of out-of-district counsel necessary. Defendant argues that,

> there is no evidence that Plaintiffs needed to obtain counsel from out-of-district at out-of-district rates in order to competently pursue their claims. In fact, one of Plaintiffs' declarants, attorney Justin Strother is an FLSA lawyer practicing within the district, as well as one of Plaintiffs' lead lawyers, Roberto Ramirez, belying any argument of a lack of competent local counsel within the district that would have necessitated out of state counsel. Rather, the lawyers doing work in this district should be compensated at Southern District of Texas rates and not Nashville rates.[53]

Because Plaintiffs have failed to provide "abundant and uncontradicted evidence" that turning to out-of-district counsel was necessary, the Court declines to consider Nashville as the relevant community for this matter.[54]

Having established that McAllen is the relevant community, and that Plaintiffs have failed to establish a reasonable rate for the McAllen community, the Court now turns to the consideration of the reasonable rate for the McAllen Community.

In the past when assessing a reasonable rate for a given community, courts, including this Court have turned to data collected by the State Bar of Texas to glean a starting point.[55] For example, the 2015 Hourly Rate Fact Sheet Published by the Texas State Bar sets a median hourly rate for Labor-Employment Attorneys at $225/hr in South Texas MSAs.[56] Plaintiffs assert that the

---

[52] Dkt. No. 214 at 5.
[53] Dkt. No. 218 at 11.
[54] *Cf. McClain*, 649 F.3d at 383 ("the record is replete with affidavits from a variety of expert employment lawyers who swore that no Texas attorneys were will and able to assist in such a large case that might drag on for years without any guarantee of financial renumeration.").
[55] *Avila v. A Healthy Living Home Health Inc.*, No. 7:14-CV-00982, 2018 WL 2323280, *2 (S.D. Tex. Mar. 2, 2018).
[56] State Bar of Texas, Department of Research & Analysis, 2015 Hourly Fact Sheet at 10, https://www.texasbar.com/AM/Template.cfm?Section+Demographic_and_Economic_Trends&Template=/CM/cont entDisplay.cfm&ContentID=34182.

State Bar of Texas has completely discontinued collecting and publishing rate information and now asserts on its website: "Past hourly rate reports were not designed for nor intended to be used for setting appropriate attorney fees. Other factors should be considered in determining attorney hourly rate fees that are outside the scope of these reports."[57] Defendant provides that "Clio publishes a list of hourly fees every year. In 2022 for Texas, the average hourly fee for a labor and employment lawyer was $370/hr . . . ."[58] Plaintiffs object to the Clio publication by stating that "Defendant does not bother to describe Clio's methodology, nor does it cite even a single case where a court has relied upon such a list in setting reasonable rates."[59]

No matter the study, it is clear to the Court that the requested rates are higher than an average rate in the McAllen market. Neither Plaintiffs nor Defendant have effectively presented evidence of what constitutes a reasonable rate for a case such as this in the McAllen market. However, as previously mentioned, Defendant has proposed the Court consider "[a] reduction to $500/hour for the two lead counsel, $400/hour for the other partners and $220 for the associates, and $100/hour for the 'litigation coordinators . . . ."[60] Considering the information presented to the Court, this amount is generally reasonable for all but the lead attorney in this case. However, after a consideration of the *Johnson* factors, specifically the time spent, the complexity, and the outcome of this matter, the Court does find that Jerry E. Martin's requested rate of $600/hour is warranted. While this was already a complex dispute, the Court has firsthand knowledge of the time and coordination that was spent by lead counsel on both sides of this matter ensuring that every stage

---

[57] Dkt. No. 212 at 6 (quoting Demographic & Economic Trends, State Bar of Texas, https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends).
[58] Dkt. No. 218.
[59] Dkt. No. 222 at 10.
[60] *Id.*

of litigation, including and especially the trial, ran as smoothly as possible. Thus, considering all relevant factors, the Court finds Mr. Martin's requested rate is reasonable.

Accordingly, the Court finds that $600/hour for Jerry E. Martin, $500/hour for Roberto "Bobby" Ramirez, $400/hour for the other partners, $220 for the associates, and $100/hour for the 'litigation coordinators' are reasonable rates.

*2. Reasonable Time*

The Court now considers the second step in the lodestar analysis, determining the number of hours reasonably expended on litigation. "A fee application should include 'time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.'"[61] Counsel for Plaintiffs have provided the time expended on this matter for the Court's review in two different declarations. The time expended in this matter for any counsel or litigation coordinator associated with Barrett Johnson is provided in the declaration of Jerry Martin.[62] The time expended for Roberto "Bobby" Ramirez is provided in his own separate declaration.[63] The Court condenses those hours together and reproduces them here for ease of review:

| Name | Hours billed |
|---|---|
| Roberto "Bobby" Ramirez | 197.2 |
| Jerry E. Martin | 1052.9 |
| David W. Garrison | 68 |
| Scott P. Tift | 9.1 |
| Seth M. Hyatt | 465.5 |
| Matthew E. McGraw | 59.2 |
| Joshua A. Frank | 75.5 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | 1131.4 |

---

[61] *Broyles v. Texas*, No. CIV.A.H-08-02320, 2009 WL 2215781at *11 (S.D. Tex. July 23, 2009), aff'd, 381 F. App'x 370 (5th Cir. 2010) (citing *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 179 (2d Cir. 1998)).
[62] Dkt. No. 217.
[63] Dkt. No. 216.

In their motion, Plaintiffs assert that they take "billing judgment" seriously and thus are "not seeking to be awarded the full value of the time . . . reflected in their billing record."[64] Thus, they have proposed areas where they are affirmatively writing off fees. Unfortunately, Plaintiffs have provided the Court with an amount they are writing off instead of the hours they wish to reduce. Because the Court has now found that, for the most part, the proposed hourly rates were not reasonable, the total amounts do not reflect the individual hours deducted. From the Court's review of the highlighted portions Plaintiffs have provided, the following hours remain after removing Plaintiffs' affirmative reductions:

| Name | Hours remaining |
|---|---|
| Roberto "Bobby" Ramirez | 197.2 |
| Jerry E. Martin | 1005.2 |
| David W. Garrison | 68 |
| Scott P. Tift | 5.1 |
| Seth M. Hyatt | 452.8 |
| Matthew E. McGraw | 59.2 |
| Joshua A. Frank | 75.5 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | 1027.8 |

In their response, Defendant argues many of the time entries should not be allowed. The Court will address each in turn.

   *i.* *Plaintiffs' charges for $83,218.50 in clerical work should be excluded.*

"Attorney's fees . . . may not be awarded for clerical work."[65] Plaintiffs agree that "[u]pon review of the billing entries challenged by Defendant as clerical . . . there is some merit to Defendant's position. However, Defendant has flagged far too many entries as clerical."[66]

---

[64] Dkt. No. 212 at 22.
[65] *Ramirez v. Lewis Energy Grp.*, L.P., 197 F. Supp. 3d 952 (S.D. Tex. 2016).
[66] Dkt. No. 222 at 3.

Plaintiffs then give examples of those entries that they believe are not clerical tasks. Instead of "[a]rguing line-by-line over . . . ostensibly clerical time entries . . . Plaintiffs suggest that the Court simply discount Plaintiffs' fees by two thirds the amount that Defendant seeks for a clerical work adjustment."[67]

"Hours that are excessive, redundant, or otherwise unnecessary are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."[68]

After a review of those hours that Defendant's object to as clerical, the Court finds that Plaintiffs suggestion of discounting Plaintiffs' fees by two thirds the amount that Defendant seeks for a clerical work adjustment a reasonable remedy to account for the actual clerical entries that Defendant has pointed out, but not going so far as to deduct those items that should not be considered clerical. However, as encountered before, both Defendant's requested deduction of $83,218.50 and Plaintiffs proffered two thirds compromise of $55,479 reflect the rejected proposed hourly rates. Defendant has provided that the clerical hours amount to 501.1 in its response[69] but the exhibit containing those hours in detail totals 518.8.[70] Thus, after conducting its own review of the disputed hours, then deducting two thirds of that amount from the hours already reduced by Plaintiffs initial deductions, the Court finds that following hours remain at this point in the assessment:

| Name | Hours remaining |
|---|---|
| Roberto "Bobby" Ramirez | 197.2 |
| Jerry E. Martin | 999.4 |

---

[67] *Id.* at 4.
[68] *Broyles*, No. CIV.A.H-08-02320, 2009 WL 2215781 at *11 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).
[69] Dkt. No 218 at 3.
[70] Dkt. No. 218-2 at 20.

| | |
|---|---:|
| David W. Garrison | 68 |
| Scott P. Tift | 5.1 |
| Seth M. Hyatt | 449.1 |
| Matthew E. McGraw | 59.2 |
| Joshua A. Frank | 75.5 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | 697.3 |

      *ii.  Plaintiffs' $26,065 in charges related to unidentified Plaintiffs should be excluded.*

      Next, Defendant asserts that the Court should exclude any vague entries "that reference actions taken regarding a 'potential client,' 'client,' 'potential opt-in,' 'opt-in plaintiff,' or 'plaintiff,' without the name of any specified individual." The Court agrees that most of these entries are impermissibly vague[71] because they do not specify if they pertain to one of the remaining opt-in Plaintiffs. However, a few disputed entries in particular contain sufficient information to be billed. First, on January 1, 2022, Jerry Martin has billed 3.4 hours for "Zoom with M. Rogers, T. Piatt, D. Smith."[72] Mattie L. Rogers and Debra Smith are opt-in Plaintiffs who remained for the duration of litigation. Todd Piatt was terminated on February 24, 2022.[73] Thus, the Court will only deduct one third of that time as impermissible. Further, on February 7, 2023, an entry stating that Jerry Martin was "[p]reparing for and doing Zooms with Strolis, La Manna, Zubowski, McLaurin, and McCrary-Taylor" for 6.9 hours is permissible as those are opt-in Plaintiffs who remained for the duration of litigation.[74] Another entry on February 15, 2022, stating that Jerry Martin was "prepar[ing] for and Zoom with McLaurin" for 0.9 hours is permissible.[75] Additionally, because a number of these disputed entries have already been reflected in the

---

[71] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), cert. denied, 516 U.S. 862 (1995).
[72] Dkt. No. 218-1 at 52.
[73] Dkt. No. 143.
[74] Dkt. No. 218-1 at 59.
[75] *Id.* at 62.

previous section, the Court has removed those disputed entries that were already accounted for in the previous section. After that review, the following hours remain:

| Name | Hours billed |
|---|---|
| Roberto "Bobby" Ramirez | 197.2 |
| Jerry E. Martin | 969.7 |
| David W. Garrison | 68 |
| Scott P. Tift | 5.1 |
| Seth M. Hyatt | 447.7 |
| Matthew E. McGraw | 59.2 |
| Joshua A. Frank | 75.5 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | 649.2 |

*iii.  A $3,600 double-billed entry must be excluded.*

Defendant asserts that a double billed entry on April 10, 2018 should be excluded.[76]

Plaintiffs concede to the error.[77] After the deduction, the following hours remain:

| Name | Hours billed |
|---|---|
| Roberto "Bobby" Ramirez | 197.2 |
| Jerry E. Martin | 963.7 |
| David W. Garrison | 68 |
| Scott P. Tift | 5.1 |
| Seth M. Hyatt | 447.7 |
| Matthew E. McGraw | 59.2 |
| Joshua A. Frank | 75.5 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | 649.2 |

---

[76] Dkt. No. 218 at 5.
[77] Dkt. No. 222.

*iv.  Plaintiffs' charges for $73,375 in vague time entries should be excluded.*

Defendant asks the Court to deduct Plaintiffs' charges for vague entries. Defendant argues that "[s]ome examples of impermissibly vague entries include phrases like "legal research," "trial preparation," and "met with client" without any further descriptive detail. Entries that are "not illuminating as to the subject matter" or "vague as to precisely what was done" are impermissibly vague and subject to exclusion."[78] Plaintiffs "dispute this characterization under Fifth Circuit law, the relevant standard is whether 'the supporting documentation is too vague to permit meaningful review.' And under that standard, most of these 'vague' entries are not vague at all."[79]

"[N]ot illuminating as to the subject matter" or "vague as to precisely what was done" gives the district court sufficient leeway within which to accept or reject fee applications . . . . Litigants take their chances when submitting such fee applications, as they provide little information from which to determine the "reasonableness" of the hours expended on tasks vaguely referred to as "pleadings," "documents," or "correspondence" without stating what was done with greater precision."[80] With that being said, the Court agrees that some of the entries are impermissibly vague such as "work up case" or "[w]ork on client outreach."[81] Even with a clear understanding of this case, the Court is unable to glean what is meant by entries such as these.

However, many of the entries disputed by Defendant as vague are supported by the context of the litigation, which are reflected throughout this Court's docket. For example, it is clear why Jerry Martin would need to have a "[p]hone call with V. Loy," the named Plaintiff in this matter on September 8, 2017, a few months before the filling of the Complaint in this Court. The exact

---

[78] Dkt. No. 218 at 5-6 (citing *Leroy v. City of Houston (Leroy II),* 906 F.2d 1068, 1080 (5th Cir. 1990)).
[79] Dkt. No. 222 at 15 (quoting *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319 (5th Cir. 1995)).
[80] *La. Power & Light Co. v. Kellstrom,* 50 F.3d at 327 (citations omitted).
[81] Dkt. No. 218-1 at 1 & 4.

details of that phone call do not need to be expounded in an already lengthy billing document for the Court to glean that this would be permissible billing.

Thus, the Court has conducted an independent review of the entries Defendant has flagged as vague for this section and removed any that were able to be clearly supported by this Court's review of the record. And again, because a number of these disputed entries have already been reflected in the previous sections for other reasons, the Court has not double counted those that were already accounted for previously. After the Courts review, the following hours remain:

| Name | Hours billed |
|---|---|
| Roberto "Bobby" Ramirez | 197.2 |
| Jerry E. Martin | 955.7 |
| David W. Garrison | 68 |
| Scott P. Tift | 5.1 |
| Seth M. Hyatt | 447.7 |
| Matthew E. McGraw | 59.2 |
| Joshua A. Frank | 75.5 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | 621.1 |

> v. *All entries related to the separate qui tam action filed by some of the Plaintiffs must be excluded, which include at least $1,512 in fees.*

Defendant next argues that the Court should exclude any fees related to the separate *qui tam* lawsuit. Defendant provides that "[b]ecause of Plaintiffs' counsel's vague billing practices . . . it is difficult to parse out the entries potentially related to the *qui tam* action. However, Defendant notes that it is Plaintiffs' burden to establish that the billing entries are properly recovered in this action, and not Defendant's burden to disprove that fact."[82] Defendant has provided entries that it believes "appear on their face to relate to the *qui tam* action."[83]

---

[82] Dkt. No. 218 at 7.
[83] *Id.* at 7-8.

Plaintiffs argue that Defendant is mistaken because "neither Barrett Johnson no[r] Ramirez Law represented any Plaintiffs in that *qui tam* action."[84] Plaintiffs further provide explanation for the hours Defendant has specifically argued against such as the FOIA request was made "to the Department of Labor to determine whether there were any past or pending enforcement actions that might be relevant to the issues of knowledge or willfulness" and that time spent communicating with the attorneys at Waters & Kraus and the Government was "to ensure that no developments in the *qui tam* would undermine the FLSA . . . ."[85] The Court finds that Plaintiffs have met their burden here and will not deduct the hours.

> vi. *All travel time should be charged at a 50% rates, [sic] totaling a $40,453.75 reduction.*

Defendant next requests the Court reduce travel time because "[n]on-working travel time is routinely discounted at a lower hourly rate; in the Fifth Circuit, travel time is typically compensated at 50%."[86]

Plaintiffs assert that while some Courts have employed the approach of reducing travel time by 50%, "the issue is discretionary and there is no general consensus that travel time should be reduced."[87] Plaintiffs support this argument by asserting that Plaintiffs needed to obtain qualified counsel from outside their local community, that Defendant had the opportunity to limit the expenses by engaging in settlement discussions, and that Defendant has not provided the billing rates for their own attorneys. As to the first argument, the Court has already found that Plaintiffs

---

[84] Dkt. No. 222 at 15.
[85] *Id.* at 15-16.
[86] Dkt. No. 218 at 8 (citing *Acosta v. Lifetime Living, Inc.*, No. 7:18- CV-191, 2020 WL 0758975, at *4 (S.D. Tex. Nov. 6, 2020) (slip op.) (collecting cases).
[87] Dkt. No. 222 at 16 (quoting *Rhines v. Salinas Construction Technologies Limited*, No. 2:11-cv-262, 2014 WL 122778256 at *2 (S.D. Tex. Oct. 17, 2014)).

failed to prove that the hiring of outside counsel was necessary. As to the next two arguments, Plaintiffs have the burden to prove that their own billing rates are reasonable, Defendant does not.

Because there is no indication in the billing records that any work was actually performed during the disputed travel, the Court finds it appropriate to compensate the travel at a 50% rate.[88] Accordingly, the following hours remain:

| Name | Hours billed |
|---|---|
| Roberto "Bobby" Ramirez | 197.2 |
| Jerry E. Martin | 909.4 |
| David W. Garrison | 61.8 |
| Scott P. Tift | 5.1 |
| Seth M. Hyatt | 441.2 |
| Matthew E. McGraw | 59.2 |
| Joshua A. Frank | 75.5 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | 616.7 |

> *vii. Plaintiffs have not fully deducted entries pertaining to excluded expert Dr. Liesl Fox, which requires an additional $8,375 reduction.*

Finally, Defendant argues "Plaintiffs stated that they reduced their requested fees by removing all work related to their excluded expert, but there are missing entries regarding Dr. Fox's work that remain and should be excluded."[89] Further Defendant asserts that "50% of all time spent preparing for and deposing Defendant's expert Dr. Michael DuMond and reviewing his reports prior to the time that Dr. Fox's report was excluded from the case in September 2021 should be excluded."[90]

---

[88] *In re Anderson Grain Corp.,* 222 B.R. 528, 532 (Bankr.N.D.Tex.1998) (finding one-half the usual hourly rates for time actually spent working on a matter while traveling more than adequate); *In re Bennett Funding Group, Inc.,* 213 B.R. 234, 251 (Bankr.N.D.N.Y.1997) (explaining that "travel time will be compensable at one-half normal rates unless the Court is satisfied that work was performed during travel").
[89] Dkt. No. 218 at 8.
[90] *Id.* at 10.

"Plaintiffs agree that several of their time entries relating to Plaintiff's expert, Dr. Liesl Fox—who was ultimately excluded by the Court—were missed when Plaintiffs' Counsel went through their bill to remove such entries."[91] Thus, the Court will remove those hours. However, Plaintiffs also argue that the Court should not reduce the time spent preparing for and deposing Dr. DuMond because he "remained Defendant's expert and, in fact, testified at trial even after Dr. Fox was excluded."[92] The Court agrees that the time spent preparing for and deposing Dr. DuMond is recoverable. The following hours thus remain:

| Name | Hours billed |
|---|---|
| Roberto "Bobby" Ramirez | 197.2 |
| Jerry E. Martin | 904.4 |
| David W. Garrison | 61.8 |
| Scott P. Tift | 5.1 |
| Seth M. Hyatt | 441.2 |
| Matthew E. McGraw | 59.2 |
| Joshua A. Frank | 73.3 |
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | 616.3 |

After assessing the reasonable hourly billing rate and the reasonable number of hours expended on the litigation, the following Lodestar calculation is reached:

| Name | Hourly Rate | Hours billed | Totals |
|---|---|---|---|
| Roberto "Bobby" Ramirez | $500 | 197.2 | $  98,600.00 |
| Jerry E. Martin | $600 | 904.4 | $542,640.00 |
| David W. Garrison | $400 | 61.8 | $  24,720.00 |
| Scott P. Tift | $400 | 5.1 | $    2,040.00 |
| Seth M. Hyatt | $220 | 441.2 | $  97,064.00 |
| Matthew E. McGraw | $220 | 59.2 | $  13,024.00 |
| Joshua A. Frank | $220 | 73.3 | $  16,126.00 |

---

[91] Dkt. No. 222 at 4.
[92] *Id.* at 16.

| | | | |
|---|---|---|---|
| Litigation Coordinators (Nicole Chanin, Grant Gilbert, Emily Seaborn Tasha Ellis, Sarah McClenahan, Emily Alexander, Elizabeth Lusnak) | $100 | 616.3 | $ 61,630.00 |
| | | | **Fee Total: $855,844.00** |

Plaintiffs request $5,000.00 of the fee award to be designated as an incentive payment to Named Plaintiff Valerie Loy "for the costs they incurred to participate in his litigation, including travel charges, notary charges, and lost wages resulting from court appearances, interviews, and depositions."[93] The Court is not opposed to this request and hereby designates $5,000.00 of the $765,404.00 fee award for Named Plaintiff Valerie Loy.

### III. COSTS

#### a. Legal Standard

Section 216(b) of the FLSA authorizes payment of "costs of the action."[94] Pursuant to 28 U.S.C. § 1920, the Court "may tax as costs the following":

> (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services.

"The Supreme Court has indicated that courts may only award costs which are articulated in § 1920 absent explicit statutory or contractual authorization to the contrary."[95] However, the Fifth Circuit has "has interpreted the 'attorney's fee' allowed by [Title VII] to include 'reasonable

---

[93] Dkt. No. 212 at 23-24 (citing *Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *3 (S.D. Tex. May 7, 2008) (approving $1,000 incentive payment in FLSA settlement and collective cases from within the fifth Circuit showing incentive payments to class and collective named plaintiffs, ranging between $1,000 to $10,000)).

[94] 29 U.S.C.A. § 216(b).

[95] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 444-445 (1987).

out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services,' such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs."[96]

### b. Analysis

Plaintiffs pray for this Court to award "$80,133.77 in expenses with an interest rate of 2.02% per annum running from the date the Court entered its Final Verdict, June 1, 2022."[97]

Defendant objects to portions of Plaintiffs' requested costs. The Court will address each in turn.

1. *Plaintiffs have not met their burden of identifying more than $4,347.99 in recoverable costs under 28 U.S.C. § 1920*

Defendant first argues that many of the requested costs do not "fall[] within the narrow scope of § 1920."[98] First, Defendant argues that "Plaintiffs have made no attempt to establish that the copies were reasonable and necessary. . . ."[99] Similar to a previous section, the Court is able to deduce the necessity of many of the copy costs contained within the billing document from having an understanding of this matter. For certain charges, it is not necessary that Plaintiffs added to an already lengthy matter with more explanation. However, Plaintiffs have failed to show that every copy has been necessarily obtained for use in the case. Thus, the Court will reduce the copying costs by 25% to account for this discrepancy.[100] The total amount of costs labeled copying by

---

[96] *Rebollar v. Ortega Medical Clinic, P.L.L.C.*, No. CV 4:18-0846, 2019 WL 3975454 (S.D. Tex. Aug. 22, 2019) (quoting *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001)).
[97] Dkt. No. 212 at 2.
[98] Dkt. No. 218 at 16.
[99] *Id.*
[100] *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-00295, 2016 WL 4594945 (S.D. Tex. Sept. 2, 2016) (This lawsuit was based on voluminous pay records for a large class of plaintiffs and the Court is sure that some amount of the copies were reasonable and necessary for the litigation. However, without some evidence provided by Plaintiffs regarding the nature of the copies and some detail about why they were reasonable and necessary to the litigation, the Court will reduce the copying costs by 25% to account for the possibility that some of the copies were not necessary for the litigation, but were produced for the convenience of the attorneys.").

Plaintiffs amount to $3,960.45. Therefore, the Court will reduce the $80,133.77 in expenses by $990.11, leaving $79,143.66.

Additionally, Defendant argues that "Plaintiffs cannot recover their PACER fees, because they have not provided any explanation as to why they were reasonable or necessary for use in the case. Moreover, Plaintiffs cannot charge both for 25 instances of fees for PACER, from which pleadings are downloadable, while also charging for "copying costs" of all pleadings in the case."[101] Again, the Court can deduce why these PACER charges were necessary given an understanding of the matter and the Court has already reduced the amount to account for duplicate copy costs.

### 2. *Plaintiffs may not recover non-§ 1920 expenses like travel, meals, lodging, research.*

Defendant next argues that this Court should follow the methodology of other Courts within this district that have strictly interpreted § 1920 to only allow the costs outlined in the six categories within that statute.[102] The Court is aware of the judicial split on this matter. However, as previously noted, the Fifth Circuit has interpreted Title VII's attorney fee provision to allow reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. Accordingly, the Court declines to follow Defendant's suggested standard.

Defendant then argues that "[i]f the Court is disinclined to follow . . . other cases excluding all non-§ 1920 expenses, the Court must nevertheless review the reasonableness of those requested expenses."[103] Defendant then provides "a small example" of the unreasonable and unnecessary costs.[104] Once again, the Court is able to deduce the reason for the vast majority of these costs with

---

[101] Dkt. No. 218 at 17.
[102] Dkt. No. 218 at 18.
[103] *Id.*
[104] *Id.*

an understanding of the stages of litigation in this matter. However, after a review the Court will reduce the entry on January 14, 2022 for K. Johnson and Spouse [105] by half as the Court will not allow the cost for the spouse to be billed. Thus, the remaining amount after that reduction is $78,824.46.

Defendant next argues that the Court "should not award the travel expenses Plaintiffs [sic] in attending the trial of their own claims in the venue that they selected. Plaintiffs were entitled to individually pursue their claims in their home jurisdiction without incurring travel expenses, but opted to join in litigation pending in McAllen instead."[106] Plaintiffs rebuts this argument by stating that "Defendant should not be permitted to punish Plaintiffs or their counsel in this way.

The Court first notes that one of the purposes of an FLSA collective action is to promote efficiency and this was clearly true in this case. Rather than proceeding with twenty-three separate trials, the case was tried in seven days with one jury in a venue where the named Plaintiff worked. Furthermore, as the Fifth Circuit noted in rejecting Defendant's appeal, and specifically Defendant's arguments relating to fairness and procedural considerations, 'it was Rehab Synergies that successfully moved the district court—over Plaintiffs' objection—to require the jury to make individualized findings of liability.'"[107] The Court agrees, Defendant moved for the Court to require the jury to make individual findings of liability and this Court agreed that it was appropriate. This necessitated each Plaintiff testify and at least one Plaintiff chose not to appear because it was not cost effective. Thus, Defendant's argument that those Plaintiffs cannot now recoup their travel fees is without merit.

---

[105] Dkt. No. 217-1 at 101.
[106] Dkt. No. 218 at 19.
[107] Dkt. No. 222 at 12.

Having addressed the concerns raised by Defendant and after reviewing the records submitted by Plaintiffs, the Court finds that the appropriate total cost and expenses award is $78,824.46.

## IV. SATISFACTION OF JUDGMENT

Having considered the Plaintiffs' motion for attorney's fees, costs, and expenses, the Court now moves to Defendant's "Notice of Satisfaction of Judgment of Damages."[108]

On July 15, 2022 this Court entered an order approving the supersedeas bond in the amount of the damages award of $443,795.34, and staying execution of the Court's final judgment until after the Fifth Circuit resolved the appeal and entered its mandate.[109] The Fifth Circuit affirmed this Court's judgment on July 13, 2023 and entered its mandate on that date.[110]

On the same day of July 13, 2023, Plaintiffs' counsel sent a letter to Defendant's counsel demanding payment of the $443,795.34 damages award to Plaintiffs, plus interest, and requested that payment be made payable to Plaintiffs' counsel.

On August 4, 2023, Defendant made payment of said judgment of $443,795.34 plus interest in full by check in the amount of $454,331.89 payable to Plaintiffs' counsel, which amount was deposited by Plaintiffs' counsel.[111]

Defendant now requests the Court "to release the supersedeas bond of $443,795.34 based upon its satisfaction of the judgment award . . . that was secured by the bond, and hereby fully and completely satisfies the same."[112]

Plaintiffs oppose Defendant's request. In their response, Plaintiffs state that

Plaintiffs do not dispute that Defendant Rehab Synergies, LLC recently made a payment in the amount of $443,795.35. The judgment ordered by this Court, however, has not been satisfied as the Court, in the Final Judgment, explicitly held: "It is further ORDERED, ADJUDGED AND DECREED that Plaintiffs shall recover attorney's fees from Defendant." (Final Judgment, Doc. No. 173).

---

[108] Dkt. No. 219.
[109] Dkt. No. 190.
[110] Dkt. No. 210.
[111] Dkt. No. 219 at 2.
[112] *Id.*

Initially, Defendant's Counsel sought Plaintiffs' Counsel's signature on a proposed Satisfaction of Judgment. This prompted Plaintiffs' Counsel to inquire as to the basis for a satisfaction of judgment without payment of Plaintiffs' attorney's fees and expenses. During this conversation, Counsel for Defendant disclosed, for the first time, that Rehab Synergies, LLC was "no longer in business," but otherwise did not answer any questions about the legal status of the entity and whether it had been dissolved.

Based upon this information, Plaintiffs oppose any attempt to deem the judgment satisfied. Until Defendant pays the attorney's fees and expenses that this Court ultimately awards, the judgment is not satisfied.[113]

Plaintiffs' original response to Defendant's motion for supersedeas bond and to stay execution of judgment pending appeal states that "so long as the Court deems this bond to constitute adequate guarantee of the financial obligations arising from the final judgment entered against Defendant, then Plaintiffs have no objection to Defendant's request to stay execution of the judgment pending appeal."[114] The Court noted that language in the order approving the bond.[115]

The Court's final judgement in relevant part states that,

[i]t is further ORDERED, ADJUDGED AND DECREED that Plaintiffs shall recover attorney's fees from Defendant. It is further ORDERED, ADJUDGED AND DECREED that the judgment here rendered shall bear interest at the rate of 2.02% per annum from the date of the judgment until paid in full. It is further ORDERED, ADJUDGED AND DECREED that the costs of court are taxed against Defendant, for which let execution issue.[116]

Thus, the obligations arising from the final judgment include the attorney's fees, interest and costs. Costs were just determined in this order, and likewise, the interest was not fully realized until the issuance of this order.

The plain language of the Appeal Bond itself states that Rehab Synergies, LLC is bound to the judgment "rendered in favor of the Obligee and against the Principal, adjudging and decreeing

---

[113] Dkt. No.
[114] Dkt. No. 182.
[115] Dkt. No. 190 at 2.
[116] Dkt. No. 173 at 3.

that the Obligee recover from said Principal the sum of Four Hundred Forty Three Thousand Seven Hundred Ninety Five and 34/100 Dollars ($443,795.34) **together with the Obligee's cost in this action . . . .**[117] Again, said costs had not yet been determined by the Court and have yet to be fulfilled.

In its reply in support of notice of satisfaction of judgment for damages, Defendant presents a ruling from the Northern District of Florida (*Mortg. Now, Inc. v. Stone,* No. 3:09CV80/MCR/CJK, 2014 WL 12703720, at *2 (N.D. Fla. Jan. 10, 2014)) for the proposition "that a supersedeas bond that secures only payment of the judgment and not attorneys' fees should be discharged upon payment of the judgment, notwithstanding that attorneys' fees are yet to be decided . . . ."[118] However, as Defendant has quoted, in that case "there was no ruling with regard to liability for attorneys' fees . . . ."[119] Here, the Court's final judgement clearly states that "Plaintiffs shall recover attorney's fees from Defendant."[120] While the amount of attorney's fees was yet to be determined in the judgment, there was a ruling with regard to liability for attorney's fees.

For those reasons, the Court **DENIES** Defendant's request that the bond be released and the judgment deemed satisfied.

### V.   Conclusion and Holding

For the foregoing reasons, Plaintiffs' motion for attorney's fees and costs is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are awarded **$855,844.00** in attorney's

---

[117] Dkt. No. 181-1 at 2 (emphasis added).
[118] Dkt. No. 221 at 3.
[119] *Id.*
[120] Dkt. No. 173 at 3.

fees and **$78,824.46** in costs and expenses, for a total of **$934,668.46**. Post-judgment interest will accrue at **2.02%** as specified in the Court's final judgment.[121]

       IT IS SO ORDERED.

       DONE at McAllen, Texas, this 9th day of November 2023.

_____
Micaela Alvarez
Senior United States District Judge

---

[121] Dkt. No. 173.